## SONZINSKY *v.* UNITED STATES.

No. 614. Argued March 12, 1937.—Decided March 29, 1937.

*Mr. Harold J. Bandy,* with whom *Mr. John M. Karns* was on the brief, for petitioner.

508

*Assistant Attorney General McMahon,* with whom *Solicitor General Reed* and *Messrs. Gordon Dean* and *William W. Barron* were on the brief, for the United States.

Mr. Justice Stone delivered the opinion of the Court.

The question for decision is whether § 2 of the National Firearms Act of June 26, 1934, c. 757, 48 Stat. 1236, 26 U. S. C., §§ 1132–1132 q, which imposes a $200 annual license tax on dealers in firearms, is a constitutional exercise of the legislative power of Congress.

Petitioner was convicted by the District Court for Eastern Illinois on two counts of an indictment, the first charging him with violation of § 2, by dealing in firearms without payment of the tax. On appeal the Court of Appeals set aside the conviction on the second count and affirmed on the first. 86 F. (2d) 486. On petition of the accused we granted certiorari, limited to the question of the constitutional validity of the statute in its application under the first count in the indictment.

Section 2 of the National Firearms Act requires every dealer in firearms to register with the Collector of Internal Revenue in the district where he carries on business, and to pay a special excise tax of $200 a year. Importers or manufacturers are taxed $500 a year. Section 3 imposes a tax of $200 on each transfer of a firearm, payable by the transferor, and § 4 prescribes regulations for the identification of purchasers. The term "firearm" is defined by § 1 as meaning a shotgun or a rifle having a barrel less than eighteen inches in length, or any other weapon, ex-

cept a pistol or revolver, from which a shot is discharged by an explosive, if capable of being concealed on the person, or a machine gun, and includes a muffler or silencer for any firearm. As the conviction for, non-payment of the tax exacted by § 2 has alone been sustained, it is unnecessary to inquire whether the different tax levied by § 3 and the regulations pertaining to it are valid. Section 16 declares that the provisions of the Act are separable. Each tax is on a different activity and is collectible independently of the other. Full effect may be given to the license tax standing alone, even though all other provisions are invalid. *Weller* v. *New York,* 268 U. S. 319; *Field* v. *Clark,* 143 U. S. 649, 697; cf. *Champlin Refining Co.* v. *Commission,* 286 U. S. 210, 234.

In the exercise of its constitutional power to lay taxes, Congress may select the subjects of taxation, choosing some and omitting others. See *Flint* v. *Stone Tracy Co.,* 220 U. S. 107, 158; *Nicol* v. *Ames,* 173 U. S. 509, 516; *Bromley* v. *McCaughn,* 280 U. S. 124. Its power extends to the imposition of excise taxes upon the doing of business. See *License Tax Cases,* 5 Wall. 462; *Spreckles Sugar Refining Co.* v. *McClain,* 192 U. S. 397, 412; *United States* v. *Doremus,* 249 U. S. 86, 94. Petitioner does not deny that Congress may tax his business as a dealer in firearms. He insists that the present levy is not a true tax, but a penalty imposed for the purpose of suppressing traffic in a certain noxious type of firearms, the local regulation of which is reserved to the states because not granted to the national government. To establish its penal and prohibitive character, he relies on the amounts of the tax imposed by § 2 on dealers, manufacturers and importers, and of the tax imposed by § 3 on each transfer of a "firearm," payable by the transferor. The cumulative effect on the distribution of a limited class of firearms, of relatively small value, by the successive imposition of different taxes, one on the

business of the importer or manufacturer, another on that of the dealer, and a third on the transfer to a buyer, is said to be prohibitive in effect and to disclose unmistakably the legislative purpose to regulate rather than to tax.

The case is not one where the statute contains regulatory provisions related to a purported tax in such a way as has enabled this Court to say in other cases that the latter is a penalty resorted to as a means of enforcing the regulations. See *Child Labor Tax Case,* 259 U. S. 20, 35; *Hill* v. *Wallace,* 259 U. S. 44; *Carter* v. *Carter Coal Co.,* 298 U. S. 238. Nor is the subject of the tax described or treated as criminal by the taxing statute. Compare *United States* v. *Constantine,* 296 U. S. 287. Here § 2 contains no regulation other than the mere registration provisions, which are obviously supportable as in aid of a revenue purpose. On its face it is only a taxing measure, and we are asked to say that the tax, by virtue of its deterrent effect on the activities taxed, operates as a regulation which is beyond the congressional power.

Every tax is in some measure regulatory. To some extent it interposes an economic impediment to the activity taxed as compared with others not taxed. But a tax is not any the less a tax because it has a regulatory effect, *United States* v. *Doremus, supra,* 93, 94; *Nigro* v. *United States,* 276 U. S. 332, 353, 354; *License Tax Cases, supra;* see *Child Labor Tax Case, supra,* 38; and it has long been established that an Act of Congress which on its face purports to be an exercise of the taxing power is not any the less so because the tax is burdensome or tends to restrict or suppress the thing taxed. *Veazie Bank* v. *Fenno,* 8 Wall. 533, 548; *McCray* v. *United States,* 195 U. S. 27, 60–61; cf. *Alaska Fish Co.* v. *Smith,* 255 U. S. 44, 48.

Inquiry into the hidden motives which may move Congress to exercise a power constitutionally conferred upon

it is beyond the competency of courts. *Veazie Bank* v. *Fenno, supra; McCray* v. *United States, supra,* 56–59; *United States* v. *Doremus, supra,* 93–94; see *Magnano Co.* v. *Hamilton,* 292 U. S. 40, 44, 45; cf. *Arizona* v. *California,* 283 U. S. 423, 455; *Smith* v. *Kansas City Title Co.,* 255 U. S. 180, 210; *Weber* v. *Freed,* 239 U. S. 325, 329–330; *Fletcher* v. *Peck,* 6 Cranch 87, 130. They will not undertake, by collateral inquiry as to the measure of the regulatory effect of a tax, to ascribe to Congress an attempt, under the guise of taxation, to exercise another power denied by the Federal Constitution. *McCray* v. *United States, supra;* cf. *Magnano Co.* v. *Hamilton, supra,* 45.

Here the annual tax of $200 is productive of some revenue.[1] We are not free to speculate as to the motives which moved Congress to impose it, or as to the extent to which it may operate to restrict the activities taxed. As it is not attended by an offensive regulation, and since it operates as a tax, it is within the national taxing power. *Alston* v. *United States,* 274 U. S. 289, 294; *Nigro* v. *United States, supra,* 352, 353; *Hampton & Co.* v. *United States,* 276 U. S. 394, 411, 413.

We do not discuss petitioner's contentions which he failed to assign as error below.

*Affirmed.*

---

[1] The $200 tax was paid by 27 dealers in 1934, and by 22 dealers in 1935. Annual Report of the Commissioner of Internal Revenue, Fiscal Year Ended June 30, 1935, pp. 129–131; *id.,* Fiscal Year ended June 30, 1936, pp. 139–141.