### GEHMAN v. SMITH, Collector of Internal Revenue.
### Civil Action No. 7761.

District Court, E. D. Pennsylvania.

Feb. 18, 1948.

Henry D. O'Connor, of Philadelphia, Pa., for plaintiff.

Thomas J. Curtin, Asst. U. S. Atty., of Philadelphia, Pa., for defendant.

McGRANERY, District Judge.

Plaintiff is seeking an injunction against collection of a federal tax and the government has filed a motion to dismiss. For the purposes of that motion, the facts alleged in plaintiff's complaint must be taken as true. According to the allegations, plaintiff Marvin L. Gehman, under the trade name of Branch Valley Creamery, operates a second-hand churn on the ground floor of his home at R.D. No. 2, Telford, Montgomery County, Pennsylvania. His weekly earnings are from fifty to seventy-five dollars but he operates his business in a precarious fashion, meeting bank overdrafts by rushing his collections to deposit

---

in time to meet outstanding checks. At the time of suit, his total. liabilities exceeded his total assets by about one thousand dollars, and he operated his business by the sufferance of his creditors. Plaintiff in this way supports a wife and five children.

Under Sections 2321(a) (1) and 3206(a) (2) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, §§ 2321(a) (1), 3206(a) (2), defendant proposed assessments of $4,289.40 against plaintiff as a manufacturer of butter adulterated by excessive moisture. These sections provide:

"(1) Adulterated butter. Upon adulterated butter, when manufactured or sold or removed for consumption or use, there shall be assessed and collected a tax of 10 cents per pound, and any fractional part of a pound shall be taxed as a pound."

"(2) Adulterated butter. Manufacturers of adulterated butter shall pay a special tax of $600 a year."

A conference about the proposed assessment was held September 9, 1946, at which time plaintiff conceded manufacturer's liability for the tax of ten cents per pound. Plaintiff's ability to pay was discussed at the conference and at that time the Internal Revenue Agents orally accepted plaintiff's offer in compromise of $1,000 as the maximum amount plaintiff could pay without going out of business. He was supplied with an "Offer in Compromise" form which he later completed and mailed to the Agent in Charge. Despite this agreement, in January, 1947, defendant assessed the full amount originally proposed. On January 30, 1947, plaintiff deposited one thousand dollars with defendant in accordance with his offer in compromise, and thereafter filed a Statement of Financial Condition, showing insolvency. About September 15, 1947, defendant notified plaintiff that his offer of compromise had been rejected.

Those are the facts as plaintiff states them. The government's motion raises the issue of whether they are sufficient to justify granting an injunction, for plaintiff concedes, as he must, that ordinarily there is a statutory limitation upon the jurisdiction of the District Courts to entertain suits seeking to enjoin collection of taxes. 26 U.S.C.A. Int.Rev.Code, § 3653. Plaintiff contends, however, that there are two exceptions to this statutory prohibition; i. e., when the tax is a penalty and when there are extraordinary and exceptional circumstances, and that both of these exceptions are applicable here.

Plaintiff's general statement of the law is correct, though his application to the facts may not be. It is true that a federal court has jurisdiction to enjoin collection of a tax if there are exceptional circumstances. Mazzella v. Yoke, D.C., 70 F.Supp. 462, 463. The Supreme Court has concretely indicated twice what these conditions might be. Once, in Allen v. Regents, 304 U.S. 439, 58 S.Ct. 980, 983, 82 L.Ed. 1448, the fact that a tax might be an inadmissible burden upon the governmental activity of a state was said to take it "out of the prohibition" of the statute, although the application for an injunction was denied on the merits. The peculiar problems of the Allen case are, of course, much different from the issue here. In addition, it should be noted that the Court in that case was badly split, and that of all the judges who participated, only two who felt no injunction could issue are still on the Court today. Before that decision, in Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422, an injunction was actually granted. However, the circumstances in the Miller case presented a much harsher situation than the instant case. The Second Circuit Court of Appeals in a per curiam opinion described it as "the first and only decision in which the court has actually enjoined the collection of a tax in the fact of the statute." Of the circumstances it said this, in Concentrate Manufacturing Corp. v. Higgins, 2 Cir., 90 F.2d 439, 440:

"The circumstances were peculiarly unfair; the plaintiff had begun to manufacture in reliance upon the rulings of the Treasury following several decisions of the District Court, from which no appeal had been taken, and which had held the tax not to be applicable to the business; and the tax was so high as to destroy it. Even so, two out of the eight justices who took part dissented. Although we cannot therefore say that there are no exceptions, they are at best only when the taxpayer is put

to the direct necessity, and can make out a case of gross and indisputable oppression, without adequate remedy at law."

Applying this standard to the instant case, I feel that the allegations of petitioner's complaint do not create a situation coming within the exception of 26 U.S.C.A. Int.Rev.Code, § 3653. At best he alleges that collection of the tax will put him out of business, because of his shaky financial condition, thus depriving his family of the necessities of life, and that the Internal Revenue Agent misled him with acceptance of his oral offer in compromise. But I feel that going out of business of itself does not establish "the direst necessity" or "oppression" which justifies interference with the government's collection of its taxes. Sturgeon v. Schuster, 10 Cir., 158 F.2d 811; Burke v. Mingori, 10 Cir., 128 F.2d 996; see Reams v. Vrooman-Fehn Printing Co., 6 Cir., 140 F.2d 237, 241. Plaintiff has a wife and five children, it is true, but he does not allege physical incapacity to earn his living in some other manner (Cf. Mazzella v. Yoke, supra) or that his home will be sold over his head. Cf. Leonardi v. Goldberg, D.C., 76 F.Supp. 747. Nor do plaintiff's other allegations establish a case of "gross and direst oppression". He may have been disappointed by the oral acceptance of his offer in compromise, and its later rejection, but I do not see how he has been misled to his prejudice. Certainly plaintiff has not continued to adulterate butter in reliance upon the possibility of future exemptions. He had been put on notice that the Internal Revenue Bureau considered him covered by the Code, which subjected him to a tax of ten cents per pound. There is no allegation that the offer in compromise was to cover future manufacture as well as past, nor would it be sensible to suggest it. The only change in position which plaintiff has suffered which was a result of the Bureau's vacillating policy was the disposal of War Bonds, alleged in the complaint. But if plaintiff's financial condition is so precarious, this would probably have occurred anyway in the subsequent year. In any event, I feel that no case of "the direst necessity" is made out.

Plaintiff further contends, however, that the imposition here is not a tax, but a penalty, and that the statutory prohibition does not apply to penalties. Lipke v. Lederer, 259 U.S. 557, 42 S.Ct. 549, 66 L. Ed. 1061; Regal Drug Corp. v. Wardell, 260 U.S. 386, 43 S.Ct. 152, 67 L.Ed. 318. He supports this by pointing out that Section 2320(b) has an element of scienter in it. That section provides:

"(b) Adulterated butter. 'Adulterated butter' is defined to mean a grade of butter produced by mixing, reworking, rechurning in milk or cream, refining, or in any way producing a uniform, purified, or improved product from different lots or parcels of melted or unmelted butter or butter fat, in which any acid, alkali, chemical, or any substance whatever is introduced or used for the purpose or with the effect of deoderizing or removing therefrom rancidity, or any butter or butter fat with which there is mixed any substance foreign to butter as defined in subsection (a), *with intent or effect of cheapening in cost the product or any butter* in the manufacture or manipulation of which any process or material is used with intent or effect of causing the absorption of abnormal quantities of water, milk, or cream." (Emphasis supplied.)

Nevertheless, I cannot agree with plaintiff's characterization of the levy in the instant case. When a tax is a "penalty" for the purposes of the statutory prohibition of injunctions is not an easy question. The issue poses a conflict of social policies: the need for orderly collection of governmental revenues against the right not to have property taken away without more protection than the summary distraint procedure affords. In cases like Lipke v. Lederer, supra, where the "tax" required evidence of crime to justify imposition, where it was an extremely high levy, and where it was part of an avowed attempt to prevent the manufacture of liquor, the second policy prevailed. But where the levy is lower, where the possibility that the measure has true revenue raising aspects is greater, the force of the first policy increases. Certainly the element of scienter alone does not necessarily make this imposition a penalty. Precedent in this Circuit indicates a con-

trary view. Cf. Rothensies v. Lichtenstein, 3 Cir., 91 F.2d 544. There is no question that the levy in this case has a regulatory effect. "Every tax is in some measure regulatory. To some extent it interposes an economic impediment to the activity taxed as compared with others not taxed. But a tax is not any the less a tax because it has a regulatory effect * * *." See Sonzinsky v. United States, 300 U.S. 506, 513, 57 S.Ct. 554, 555, 81 L.Ed. 772. In cases dealing with the related problem of the constitutionality of an imposition which would fall were it to be characterized as a regulatory "penalty" the Supreme Court has emphasized a policy which is applicable here, as well; i. e., that "Inquiry into the hidden motives which may move Congress to exercise a power constitutionally conferred upon it is beyond the competency of courts * * *." See Sonzinsky v. United States, supra, 300 U.S. at page 514, 57 S. Ct. at page 556.

On the facts of this case as alleged in the complaint, I would not feel justified in ignoring the strong policy plainly expressed in 26 U.S.C.A. Int.Rev.Code, § 3653. Accordingly, therefore, the government's motion to dismiss is granted, and an order should be entered in accordance with this opinion.