María C. Blanes, Petitioner, *v.* District Court of San Juan, Hon. R. Cordovés Arana, Judge, and Manuel Ledesma, etc., et al., Respondents; Rent Control Division of Puerto Rico, Intervener.

No. 18. Argued January 20, 1950.—Decided April 28, 1950.

*McConnell & Valdés* for petitioner. *Abraham Díaz González* (*Manuel Ledesma Dávila, pro se,* in·the brief) for intervener.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

The parties stipulated in the District Court of San Juan to submit the present case accepting the certainty of the facts alleged in the notice of appeal. Those facts are the following:

" 'The landlord is owner of a building and lot situated in Ponce de León Avenue, Corner Cuevillas Street, Stop 12, San-turce, Puerto Rico.

" 'The landlord acquired title to the foregoing lot on July 16, 1947, by purchase from Don Edmundo Hernández, pursuant to deed No. 26 of that same date, executed before Herbert S. Mc-Connell.

" 'On the said lot the landlord erected the building above mentioned starting the construction early in January 1948, and finishing it in May 1948.

" 'The building in question is devoted and has always been devoted exclusively to commercial purposes.

" 'By written contract for a term of three years effective from June 1, 1948, the landlord leased the whole first story of the building involved herein, to Dr. José Santiago, Jr., for a stipulated and agreed monthly rent of $450. On August 5, 1948, after the landlord filed the registration statement of the premises in the Rent Office informing about the contract entered into with Dr. Santiago, said office notified her that said contract was approved and that the maximum rent for the premise was fixed at $450 a month, for three years.

" 'By a written contract for a term of two years effective from July 1, 1948, the landlord leased a part of the second story of the building herein to Atlantic Southern Insurance Company of Puerto Rico, for a stipulated and agreed rent of $150 a month. On August 10, 1948, after the landlord filed the registration statement of the premises in the Rent Office informing about the contract entered into with the above company, said Rent Office

notified her that the contract was approved and that the maximum rent fixed for the premises was $150 a month, for two years.

" 'By written contract for a term of two years effective from July 1, 1948, the landlord leased a part of the second story of the building herein to Mr. Eliseo Martínez for an agreed and stipulated rent of $100 a month. On August 6, 1948, the landlord filed the registration statement of the premises in the Rent Office informing about the contract entered into with Mr. Martínez, said Rent Office notified her that said contract was approved and the maximum rent fixed was $100 a month, for a term of two years.

" 'The registration statements filed by the landlord in the Rent Office, covering the premises involved herein, do not contain incomplete, mistaken or false information. On the contrary, it is affirmatively alleged that the information contained in the registration statements filed by the landlord are complete, correct and certain.

" 'On January 21, 1949, the landlord was served with notice of three orders bearing that same date, issued by the Rent Office and/or Attorney Ledesma in his capacity as Director of said office, whereby the rentals previously approved by the Rent Office in connection with the three lots above mentioned were reduced with retroactive effect to December 1, 1948. The rentals in question were reduced in the following manner: Mr. Santiago from $450 a month to $375 a month; Mr. Martínez from $100 a month to $67 a month; Atlantic Southern Ins. Co. of P. R. from $150 a month to $140 a month, that is, a reduction in the total rent of the building from $700 a month to $582 a month.

" 'The landlord specifically alleges that from the date on which the building in question was for the first time leased, the facilities or services the tenant receives have not been decreased or withdrawn, nor has the building or the premises deteriorated, or the neighborhood or commercial section of the building been damaged or impaired nor have the tenants made any complaints for these or any other reasons.

" 'The first notice received by the landlord to the effect that the Rent Office intended to adjust the rentals approved on the above dates, was on December 10, 1948, through a Notice of Hearing and Summons, dated December 9, 1948.

" 'The landlord appeared in the Rent Office and after the facts in connection with the present case were stipulated, said office issued the first orders adjusting the rentals of the three tenants on January 17, 1949, which were set aside by subsequent orders of January 21, 1949, from which the present appeal has been taken.' "

They also stipulated that the only questions to be decided by the court be: "(a) Whether the Rent Office and/or its Director has legal authority, under the facts of the present case, to reduce the rentals originally fixed by the landlord; (b) whether the property involved herein is, by operation of law, exempt from the provisions of the Reasonable Rents Act; and (c) whether in case the Rent Director has legal authority to reduce the rentals in this case, he has also power to make said orders retroactive."

The court held that the building was not exempt from the provisions of the Reasonable Rents Act; that the Rent Office and its Director had power to adjust, by reducing them, the rentals originally fixed by the landlord and also, to make them retroactive.

To review this decision we issued certiorari writ in this case, under Act No. 464 of April 25, 1946.

The petitioner contends that the lower court erred in not holding that Act No. 464 of 1946 as amended is unconstitutional; in holding that the Rent Director has legal authority to issue the challenged orders and in not deciding definitively whether or not the retroactive effect given by the Rent Director to the orders appealed from was valid and in insinuating that if a provisional order had been issued subjecting petitioner's building to the terms of Administrative Order No. 4, the retroactive effect given to the orders appealed from is valid.

The petitioner first contends that Act No. 464 approved on April 25, 1946, known as Reasonable Rents Act is unconstitutional because when the Legislature declared that an emergency existed to justify the enactment of the stat-

ute, it failed to limit its operation to a definite term, or to establish the basis or standard in order that the courts and/or the people affected could ascertain by themselves whether the period of emergency had ceased, said Act being, therefore, legislation of a permanent character which depends not on the ceasing of the emergency decreed, but on future legislation, declaring such emergency as terminated.

We have already passed on this question in *Cintrón* v. *Municipal Court*, 67 P.R.R. 743, 750, where we stated:

"As to the issue that Act No. 464 deprives the plaintiff of his property without due process of law, no case has been cited involving a rent control statute for commercial buildings. However, we have no doubt that the Legislature may, under war and *post-war* conditions when prices are rising unreasonably and building materials are scarce, use the police power to restrict evictions from both dwellings and commercial buildings, provided it also makes provisions for fair and equitable rents. See *Latoni* v. *Municipal Court, supra,* p. 130." (Italics ours.)

And also:

"It is no longer disputed that rent control of housing accommodations in a period of emergency is valid. *Bowles* v. *Willingham,* 321 U. S. 503; *Fleming* v. *Rhodes, supra; Miranda* v. *District Court,* 63 P.R.R. 155. And it could perhaps be plausibly argued that similar regulation of commercial buildings is required as an incident to control over housing to avoid diversion of property from housing to commercial use. In any event, rent control of commercial buildings, under the circumstances prevailing in Puerto Rico when Act No. 464 was enacted, is a valid exercise of police power without reference to rent control of housing."

Petitioner argues that legislation of this kind, which has been upheld as valid, has always contained a fixed limit of time for its operation and due to this fact its constitutionality has been upheld, citing, among others, *Block* v. *Hirsh,* 256 U.S. 135; *Marcus Brown Co.* v. *Feldman,* 256 U.S. 170; but Act No. 464 fails to contain any provision as to when the emergency which is declared in said Act to exist

with respect to housing accommodations and leasing of commercial buildings shall be considered as terminated, and likewise as to when said Act shall cease to operate.

This is true,[1] but it has not been shown by the petitioner that the emergency existing in 1946, when Act No. 464 was approved, recognized by this Court in the *Cintrón* case, *supra*, has ceased. Failure by the Legislature to limit the operation of the law to a definite term does not render the law invalid so long as the conditions which justify the passage of the law remain. *People* v. *Title & Mortgage Guarantee Co.*, 190 N.E. 153 (New York, 1934), in which the following is copied from *Chastleton Corp.* v. *Sinclair*, 264 U.S. 543, 547; "A law depending upon the existence of an emergency or other certain state of facts to uphold it may cease to operate if the emergency ceases or the facts change even though valid when passed."

So that limiting the operation of an Act approved under the police power to meet an emergency to a definite term, may or may not be decisive for its validity, depending on whether actually the emergency which justified its approval still prevails. Likewise, and even when a time limit for the operation of a statute has not been fixed, if the emergency still exists said statute is not necessarily void. In either case it depends on whether it is actually proved that the emergency does not exist at the time the validity is attacked. *Cf. People* v. *Title & Mortgage Guarantee Co., supra*, p. 162. The petitioner herein failed not only to prove that the emergency referred to in Act No. 464 had ceased, but she did not even raise that question before the lower court.

 The petitioner also contends that her property is exempt from the provisions of the Reasonable Rents Act in accordance with § 24 of said Act. Let us see.

Insofar as pertinent, § 24 as originally approved by Act No. 464 of 1946 recited:

---

[1] See Declaration of Policy contained in § 1 of Act No. 464 of 1946.

"Section 24.—For the purpose of encouraging the construction program in Puerto Rico, every rental property for businesses and commercial and industrial purposes *whose construction is actually started on or after January 1, 1946,* and *terminated within a period of one year counting from said date,* is hereby exempt from the provisions of this Act as regards the amount of the rental to be charged during the emergency, unless the Administrator for justified reason, should extend said term for an additional period which shall in no case exceed one year. (Italics ours.)

Said Section in its pertinent part was amended by Act No. 61, approved on April 30, 1948, as follows:

"Section 24.—For the purpose of encouraging the construction program in Puerto Rico, every rental property for business nesses and every commercial and industrial property *whose construction was started on January 1, 1946, or on any date subsequent to* January 1, 1946, is hereby exempt from the provisions of this Act as regards the amount of the rental to be charged during the emergency, provided said construction was or is completed within a year from the date on which it was started." (Italics ours.)

Section 24 was again amended by Act No. 7 of August 19, 1948, as follows:

"Section 24.—For the purpose of encouraging the construction program in Puerto Rico, every rental property for business and commercial and industrial purposes *the construction of which may be actually begun in the course of the year 1946, and completed within a period of one year counting from the date on which the construction of said property was actually begun,* is hereby declared exempt from the provisions of this Act as regards the amount of the rental to be charged during the emergency, unless the Administrator, for justified reason, should extend said term for an additional period which shall in no case exceed one year."

Petitioner's building was commenced in the early part of January 1948 and it was terminated in May 1948.

The lower court held that although petitioner's property enjoyed the exemption granted by the first amendment to § 24

pursuant to Act No. 61 of 1948, *supra,* said exemption ceased on August 19, 1948, when said Section was amended by Act No. 7 of 1948, *supra,* and in its conclusions of law it expressed itself, in part, as follows:

"Since said exemption is a legislative privilege or grace, it may be altered, modified or repealed at any time by subsequent legislative action, inasmuch as no rights were created in favor of the owner of the property exempted . . .

"Unless the Legislature expressly provides that the exemption is contractual, it may be revoked at any time. For an example of a contractual exemption, see the 'Industrial Tax Exemption Act of Puerto Rico' (Act No. 184 of May 13, 1948), where in the Declaration of Policy it provided that:

'In order that the encouragement tendered by this Act in the form of tax exemption for the promotion of the industrial development of Puerto Rico may be an incentive, having a real and unmistakably sure basis, the Legislature of Puerto Rico hereby declares that it considers all tax exemptions granted under the provisions of this Act as being in the nature of a contract or agreement between the Government of Puerto Rico and the industry receiving the benefit of the exemption, and that it proposes not to adopt any legislation which may impair or limit such exemption or which may defeat the purposes of this Act.'

"It is a well-settled rule that persons who contract concerning matters which may be regulated by virtue of the police power of the state, are subject to the possible exercise of that power by the Legislature, even although it may be latent at the time the agreement is made. (Authorities). Even in case of retroactive legislation, an element which does not exist in this case, the exercise of the legislative power has been upheld when the welfare of the community is involved. (Authorities)

"A mere expectancy of future benefit does not constitute a vested right within the constitutional meaning of the phrase. (Authorities) The difference between a statutory privilege and a vested right is fundamental, inasmuch as a citizen has no vested right in such statutory privileges. (Authorities)"

The petitioner admits that if the Legislature had withdrawn the exemption in a uniform manner, on the "ground that owners of buildings which enjoyed the exemption were

making unlawful use thereof, such withdrawal would have been valid," and she goes further and admits that "even when there is no basis or justification therefor such withdrawal would be valid although the Legislature in such event, would assume the regretful position of having induced persons who acted in good faith to construct under the promise of exemption, and later taking advantage and revoking the privilege." She insists, however, that the question she raises "is not whether the Legislature may or may not withdraw such a privilege" but that "to revoke such a privilege and at the same time to maintain a privileged class [those who actually constructed during the year 1946] is not possible within our judicial system," since "legislation, by constitutional mandate, should be uniform in its application and in its effect; or there should be a reasonable classification in the absence of uniformity to justify such lack of uniformity. In the instant case there is no uniformity and there is no reasonable classification."

The petitioner does not cite any case to support the above assertions. The cases she cites refer to general rules of construction and she does this so that we should ascertain the legislative intent in approving Act No. 7 of 1948. Said cases deal with the duty of the courts to construe statutes having doubtful language and meaning and that in case of such inconsistencies, the courts must harmonize their different provisions. Lastly, petitioner argues that when an Act is susceptible of two or more interpretations the court should construe it so as to prevent a prejudice in its operation. And that as construed by the lower court, § 24 penalizes the persons who acted in good faith relying on a promise of the Legislature. However, immediately she admits that "although it is true that in acting under such promise the persons who so acted did not acquire an absolute right to the exemption, it is no less true that citizens are entitled to rest in the expectancy that their government is moved by good faith and not by more or less deceitful purposes."

We have stated at length petitioner's arguments and we believe that they merely show that her aim is to have this Court inquire into the motives which moved the Legislature to amend § 24 by Act No. 7 of 1948 and to withdraw the exemption it had granted, and consequently, to decide that it could not do so. That is not our mission. Once it is admitted that the exemption granted to the petitioner constituted a privilege and not a vested right since it was not of a contractual character, the motives a lawmaker may have had to act in the manner he did is a question beyond the competency of the courts. *Sonzinsky* v. *United States*, 300 U.S. 506, 513, where it is stated that "Inquiry into the hidden motives which may move Congress to exercise a power constitutionally conferred upon it is beyond the competency of courts." Herein, the Legislature had the constitutional power to withdraw the exemption privilege granted, wholly or partially. The effect of the amendment to § 24 in 1948 was to limit the exemption to those who actually started to construct in 1946.

There is no ambiguity in the terms of the Act to render applicable the cases cited by the petitioner and which may justify our construing them to the effect that what the Legislature intended was that the privilege granted should continue in force. The fact that in amending § 24 in 1948 the introductory phrase to the effect that the exemption was granted "For the purpose of encouraging the construction program in Puerto Rico..." was repeated, does not mean, as alleged by the petitioner, that in 1948 something which at that time could not be done was being encouraged. The introductory phrase is the same used since the enactment of Act No. 464 of 1946 and it was the Legislature's intent to limit the exemption said year.

■ Even though it was Act No. 201 of May 14, 1948 amending § 6 of Act No. 464 of 1946, *supra*, in connection with § 24 of said Act that we construed in *Ledesma, Administrator* v. *District Court; Cuyar, Intervener, ante* p. 81 we reached the same conclusion there as we do in the instant case.

As to the alleged retroactive effect of the orders issued by the Rent Director in this case, it does not exist, for said orders took effect on December 1, 1948, when Act No. 7 of 1948 was already in force. We also considered this question in the case of Cuyar, *supra*.

The judgment will be affirmed.