**Ellis CAMPBELL, Jr., District Director of Internal Revenue, Appellant,**

v.

**Gussie L. DAVENPORT, Individually and as Independent Executrix of the Estate of F. B. Davenport, Appellee.**

**No. 22470.**

United States Court of Appeals Fifth Circuit.

June 9, 1966.

As Corrected on Denial of Rehearing July 25, 1966.

Melvin M. Diggs, U. S. Atty., Dallas, Tex., Louis F. Oberdorfer, Asst. Atty. Gen., Meyer Rothwacks, Melva M. Graney, Robert A. Bernstein, Fred R. Becker, Attys., Dept. of Justice, Washington, D. C., for appellant, Martha Joe Stroud, Asst. U. S. Atty., of counsel.

Larry L. Bean, Sam G. Winstead, Dallas, Tex., for appellee, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., of counsel.

Before BELL and THORNBERRY, Circuit Judges, and FISHER, District Judge.

THORNBERRY, Circuit Judge:

The facts in this case are undisputed and fully stipulated. During the taxable year 1962, Judge F. B. Davenport was a candidate for re-election to the office of Judge of the 116th Judicial District Court of Texas. He was successful and served until his death on June 18, 1963.

Under the Texas Election Code, V.A. T.S., a candidate in a primary election must pay an assessment levied by the county executive committee before his name may be placed on the ballot.[1] The assessment is basically the candidate's apportioned share of the cost of running the election as computed by the committee from an estimate of election expenses. The assessment may be used only to de-

1. "Tex. Election Code art. 1307a (Supp. 1965). Deposit to accompany application for place on ballot.

"Every candidate subject to assessment by the county executive committee under Section 186 or Section 186a of this Code for a portion of the expenses of holding the primary elections, except candidates for the Legislature and for the State Board of Education, shall pay to the county chairman, at the time of filing his ap-

plication for a place on the ballot, a deposit of fifty dollars. In case of district offices in districts of more than one county, the candidate shall pay a deposit of fifty dollars to each county chairman with whom his application is filed. A candidate for the Legislature shall pay to the county chairman, at the time of filing his application, a deposit in the amount of the maximum amount which he may be assessed in that county, or the amount of the filing

fray the expenses arising from the primary elections as provided by statute. Funds in excess of election expenses are refunded to the candidates in proportion to the amounts each paid.

Judge Davenport was assessed $2,880.00 and received a refund of $921.60. The net assessment of $1,958.40 was claimed as a deduction by the taxpayer and disallowed by the Commissioner. Payment of $555.19 tax was required. Mrs. Davenport, individually and as executrix of Judge Davenport's estate, filed suit for refund, asserting that the net assessment is deductible as an ordinary and necessary business expense (Int.Rev.Code of 1954, § 162); as an ordinary and necessary expense incurred for the produc-

fee in that county in cases where a fixed fee is prescribed. A candidate for the State Board of Education shall pay to each county chairman, at the time of filing his application, the quotient obtained upon dividing fifty dollars by the number of counties in the district in which he is a candidate.

"After the county executive committee makes the assessments, it shall refund to each candidate within thirty days thereafter the amount of the payment in excess of the assessment against the candidate, if the deposit exceeds the assessment. If the deposit does not exceed the assessment, the balance due on the assessment shall be paid as provided in Section 186.

"The deposit herein required shall become a part of the primary fund and shall not be refundable for any reason, except to the extent that it exceeds the assessment against the candidate or represents a surplus in the primary fund after all expenses of the primary elections have been paid."

\*      \*      \*      \*      \*

"Tex. Election Code art. 1308 (Supp. 1965). Expenses of primary.

"Prior to the assessment of the candidates, the county committee shall carefully estimate the cost of printing the official ballots, renting polling places where same may be found necessary, providing and distributing all necessary poll books, blank stationery and voting booths required, compensation of election officers and clerks, and all other necessary expenses of holding the general primary and second primary in such county and on the second Monday in February preceding each primary, shall apportion such cost in such manner as in their judgment is just and equitable among the various candidates for nomination for district, county, and precinct offices only as herein defined, except the offices of Justice of the Court of Civil Appeals and members of the State Board of Education. Where a district office, except for members of the Legislature, members of the State Board of Education, and Justices of the Court of Civil Appeals, covers more than one county, the assessment of such candidate by the county shall be not more than a sum which is the quotient of the amount which he would be assessed if he represented only one county determined by the formula used to assess county candidates, when divided by the number of counties in his district. In making the assessment upon any candidate the committee shall give due consideration to the importance, emolument, and term of office for which the nomination is to be made. The committee shall by resolution direct the chairman to mail immediately to each person against whom an assessment is made a statement of the amount of such expenses apportioned to him, with the request that he pay to the county chairman, on or before the Saturday before the third Monday in February thereafter, the difference between the amount of the assessment and the amount of the deposit which accompanied his application; and no person's name shall be placed on the ballot unless he pays the assessment within the prescribed time. A candidate filing subsequently shall not be required to accompany his application with the deposit provided for in Section 185a of this Code, but shall pay the full amount assessed against him by the county executive committee within one week from the date on which his application is filed; provided, however, that where a fixed filing fee is required for any office included in this section, the amount of the fee must accompany the application. It shall be sufficient to meet the requirements of this law to mail by registered or certified letter to the chairman before the deadline herein provided, as shown by the postmark on the letter, a money order, a certified check, or a good personal check; but it shall not be sufficient to make the payment by any other type of mail unless it is delivered before the deadline.

"A candidate for the State Board of Education shall pay a filing fee of fifty dollars, which shall be prorated equally among the counties comprising the district in which he is a candidate, and the prorated amount shall be paid to

tion or collection of income (Int.Rev.Code of 1954, § 212); or as a deductible state tax (Int.Rev.Code of 1954, § 164, 26 U.S. C. § 164 (1958)).[2] The District Court concluded that the assessment was deductible "since the payment was a necessary and proper expenditure not only for the carrying on of the business but for the production of the business." Davenport v. Campbell, N.D.Tex.1964, 238 F. Supp. 568, 572.

## I.

■ Consideration of whether the assessment is deductible as an ordinary and necessary expense incurred in carrying on a trade or business or in the production of income must begin with an analysis of McDonald v. Commissioner, 1944, 323 U.S. 57, 65 S.Ct. 96, 89 L.Ed. 68. Judge McDonald sought to deduct his campaign expenses and an "assessment" paid to the party organization to obtain its support. The Court found that performance of the judicial office constituted carrying on a trade or business under the terms of the Code and that the judge was entitled to deduct all ordinary and necessary expenses paid in carrying on that trade or business. The Court noted, however, that "his campaign contributions were not expenses incurred *in being* a judge but *in trying to be* a judge for the next ten years." 323 U.S. at 60, 65 S.Ct. at 97, 89 L.Ed. at 72. (Emphasis added.) Thus, the Court drew a distinction between expenses incurred in performing the judicial function and those expended in an effort to secure election, and denied a deduction for expenses of the latter type. The Court also refused to allow a deduction of such campaign expenses as expenses incurred in the production of income. Although the assessment in the present case differs in some ways from that in *McDonald* the rationale of *McDonald* prevents the reaching of a different result here. Judge Davenport's assessment was incurred as an expense of attaining the office, not in performing the judicial function. For this reason, the deduction of the assessment as an ordinary and necessary expense incurred in carrying on a trade or business or in the production of income was properly denied by the Commissioner.

## II.

■ A more difficult question is presented in determining whether the assessment qualifies as a tax under Section 164 of the Code.[3] Prior to the 1964 Amendments and during the taxable year 1962, Section 164 provided that taxes paid or accrued within the taxable year were deductible with certain exceptions not applicable here.[4] No definition of "taxes" is found in the Code. As is frequently the case, the drafting of an acceptable definition has proven easier than applying the definition to a particular fact situation. Indeed, the Commissioner's attempts to classify assessments are classic examples of this proposition. In Revenue Ruling 57–345, such assessments were found to be taxes deductible under Section 164; while in Revenue Ruling 60–365, the assessment was held to be a fee rather than a tax.

Revenue Ruling 57–345, construing a New Mexico statute, defines "tax" as:

"an enforced contribution, exacted pursuant to legislative authority in the exercise of taxing power, and imposed and collected for the purpose of raising revenue to be used for public or governmental purposes, and

---

each county chairman at the time the candidate files his application for a place on the ballot."

2. Section 164 has been amended. Revenue Act of 1964, P.L. 88–272, 78 Stat. 19, § 207(a).

3. Two district courts have concluded that such assessments are deductible as taxes under § 164. Nichols v. United States, N.D.Ga.1963, 223 F.Supp. 709; Maness v. United States, M.D.Fla.1965, 237 F. Supp. 918.

4. Since this case arose, the Revenue Act of 1964, P.L. 88–272, 78 Stat. 19, § 207(a), amended § 164(a) of the 1954 Code to allow deduction only of taxes specifically enumerated therein and those paid or accrued in carrying on a trade or business or in the production of income.

not as a payment for some special privilege granted or service rendered. Taxes are, therefore, distinguishable from various other contributions and charges imposed for particular purposes under particular powers or functions of the Government. In view of such distinctions, the question whether a particular contribution or charge is to be regarded as a tax depends upon its real nature * * *.

"A charge primarily imposed for the purpose of regulation is not a tax, even though it produces revenue. On this basis, fees paid for dog licenses, automobile inspection, and automobile title registration have been held not to be deductible as taxes * * *. Similarly, amounts paid to purchase hunting and fishing licenses have been held not deductible as taxes * * *. On the other hand, the conduct of primary elections constitutes the performance of a proper State or Governmental function in the same manner as the conduct of general elections, and is not merely the regulation of a private function."

Since the purpose of the filing fee required by the New Mexico statute was "to raise revenue which is to be used in defraying the expenses of the primary election," the Revenue Ruling concluded that the assessment was a tax within Section 164.

The Commissioner considered the same question in Revenue Ruling 60–366 which involved the North Carolina primary filing fee. The Ruling notes that:

"an important factor in distinguishing a fee from a tax is the purpose for the imposition of the charge. Clearly, if the only or the primary purpose is the raising of revenue, the charge is a tax, and governmental regulation arising merely as an incident will not alter the character of the exaction * * *. On the other hand, 'if the fee is exacted for the primary purposes of regulating and restraining an occupation or privilege deemed dangerous to the public or to be specially in need of public control, and compli-

ance with certain conditions is required in addition to the payment of the prescribed sum, such fee is a license * * *. A charge imposed as a consideration for a privilege granted one by a governmental unit is not a "tax" in the sense in which the word is ordinarily used.' "

The Ruling then cites a North Carolina case which found the assessment to be "one of the reasonable means adopted by the legislature to regulate primary elections * * *" and concludes that "since the North Carolina Supreme Court has held [that] this levy was to regulate the primary election and was not a revenue measure, it is a regulatory fee * * *" and not a "tax." Revenue Ruling 57–435 was revoked.

Although in both Rulings the Commissioner relies on basically the same definition and finds that the purpose of the assessment determines whether it is to be classified as a tax or as a fee, he obviously has had some difficulty in applying the definition.

We now try our hand at classifying the assessment. We are not referred to any Texas cases which have attempted to determine the nature of the assessment. It is, however, not difficult to conclude that the assessment in Texas has both a regulatory and a revenue function. Thus, it cannot be doubted that the imposition of an assessment may have some deterrent effect on nuisance candidates. Yet, it would also seem obvious that the assessment was designed to cover the cost of the primary. The computation of the assessment is derived from an estimate of the cost of running the primary, the use of the funds is restricted solely for the purpose of defraying primary expenses, and refund of monies collected in excess of the cost of the primary must be refunded to the candidates. Indeed, these assessments constitute the only source of revenue for operating the primaries. That taxes may have multiple purposes is no longer a debatable proposition. As stated by the Supreme Court, "[e]very tax is in some measure regulatory. To some extent it

interposes an economic impediment to the activity taxed as compared with others not taxed. But a tax is not any the less a tax because it has a regulatory effect * * *, and it has long been established that an Act of Congress which on its face purports to be an exercise of the taxing power is not any the less so because the tax is burdensome or tends to restrict or suppress the thing taxed." Sonzinsky v. United States, 1937, 300 U. S. 506, 513, 57 S.Ct. 554, 555–556, 81 L. Ed. 772, 775.

In Texas the assessment is made by the county executive committee of the political party running the primary. This fact does not alter the nature of the assessment since it is well settled that Texas has delegated its function of conducting primaries to the political parties and that in this respect "the party's action [is] the action of the state." Smith v. Allwright, 1944, 321 U.S. 649, 660, 64 S.Ct. 757, 763, 88 L.Ed. 987. Nor is it necessarily significant that the assessment is imposed only upon those wishing to participate in the primary election. The Supreme Court found that a $200 fee imposed only upon dealers in firearms was a "tax." Sonzinsky v. United States, supra. A $600 a year charge on manufacturers of adulterated butter has also been upheld as a "tax." Gehman v. Smith, E.D.Pa.1948, 76 F.Supp. 805. Thus, neither of these facts are of particular assistance to a determination of the purpose of the assessment.

The persuasive factor in reaching our conclusion is the size of the primary assessment in Texas. A fee of $100 or even $500 might be explainable primarily in terms of regulation. But it strains our imagination to accept the Commissioner's argument that an assessment of some $2,000 is primarily for purposes of regulation. The most reasonable explanation of the size of this assessment is to raise revenue to cover the cost of the primary. This conclusion is borne out by the fact that excess funds collected must be refunded. Certainly this aspect of the assessment cannot be rationalized as a deterrent to the nuisance candidate.

Rather, we conclude here, as did the Commissioner in Revenue Ruling 57–345, that the primary purpose of the assessment is to raise revenue and that, therefore, it qualifies as a "tax" within the provisions of Section 164 as it stood prior to the 1964 Amendments.

Affirmed.