UNITED STATES of America,
Plaintiff-Appellee,

v.

Frank ROSS, Jr., Defendant-Appellant.

No. 71-3325

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

April 5, 1972.

Trammell F. Shi, Macon, Ga., Court-appointed, for defendant-appellant.

William J. Schloth, U. S. Atty., Ronald T. Knight, Macon, Ga., for plaintiff-appellee.

Before WISDOM, GODBOLD and RONEY, Circuit Judges.

GODBOLD, Circuit Judge:

Defendant appeals from a jury conviction of violating 26 U.S.C. §§ 5861(d), 5871, provisions of the Federal Gun Control Act of 1968. Section 5861(d) prohibits one's possessing a firearm not registered to him in the National Firearms Registration and Transfer Record. "Firearm" is defined in § 5845(a) to mean "a destructive device." Ross' conviction rests on possession of two crude incendiary devices commonly known as Molotov cocktails.[1]

---

* [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

1. In the terms of the indictment, "incendiary devices, each consisting of a quart glass bottle with cloth therein and containing a flammable liquid and having a cloth wick in the mouth of said bottle." See note 3, infra.

Defendant makes three contentions: (1) that a Molotov cocktail is not a "destructive device" as that term is defined in § 5845(f), and if it is the statute is so vague as to be unconstitutional; (2) that the tax imposed on the transfer of a firearm is confiscatory with respect to a Molotov cocktail, and therefore the prohibitory statute based on the tax power is invalid; (3) that his conviction must be reversed for insufficient evidence. We affirm.

 The constitutional claims require only brief discussion. With reference to a Molotov cocktail, the part of the definition of "destructive device" that refers to "(B) grenade . . . or (F) similar device" is not so vague as to be outside the constitutional requirement that a person of reasonable intelligence be forewarned what is prohibited. United States v. National Dairy Products Corp., 372 U.S. 29, 32–33, 83 S.Ct. 594, 9 L.Ed.2d 561, 565–566 (1963); United States v. Campbell, 427 F.2d 892, 893 (5th Cir. 1970), cert. denied, 402 U. S. 975, 91 S.Ct. 1673, 29 L.Ed.2d 140 (1971). Section 5845(f) itself contains the crucial limitation that a destructive device does not include any device not designed or redesigned for use as a weapon. A Molotov cocktail has no use other than as a weapon, and a person may be charged with knowledge of its similarity to a grenade.[2]

 Defendant's argument that the tax imposed is confiscatory is no more than a disguised version of the contention that a tax measure which is burdensome or restrictive is invalid. But every tax is regulatory to some extent. The test of validity is whether on its face the tax operates as a revenue generating measure and the attendant regulations are in aid of a revenue purpose. United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953); United States v. Sanchez, 340 U.S. 42, 71 S.Ct. 108, 95 L.Ed. 47 (1950); Sonzinsky v. United States, 300 U.S. 506, 57 S.Ct. 554, 81 L. Ed. 772 (1937). The motives that move Congress to impose a tax are no concern of the courts. *Sonzinsky, supra*. Furthermore, that an act accomplishes another purpose than raising revenue does not invalidate it. United States v. Doremus, 249 U.S. 86, 39 S.Ct. 214, 63 L.Ed. 493 (1919). Section 5861(d) making possession of an unregistered weapon unlawful is part of the web of regulation aiding enforcement of the transfer tax provision in § 5811. Having required payment of a transfer tax and registration as an aid in collection of that tax, Congress under the taxing power may reasonably impose a penalty on possession of unregistered weapons. Such a penalty imposed on transferees ultimately discourages the transferor on whom the tax is levied from transferring a firearm without paying the tax.[3]

 To come within the proscription of the Act a Molotov cocktail must be a "similar device" within the meaning of § 5845(f). Obviously the definition of "destructive device" to include "any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellent charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device" is descriptive and not exhaustive. Though the statute does not in terms mention Molotov cocktails, its silence is no impediment. The devices that are enumerated have in common usage limited to anti-social purposes. By their nature they are not suited for some other innocent end. A Molotov

---

2. The dictionary definition of a Molotov cocktail is "a crude hand grenade made of a bottle filled with a flammable liquid (as gasoline) and fitted with a wick or saturated rag taped to the bottom and ignited at a moment of hurling." Webster's Third New International Dictionary of the English Language (1961).

3. Appellant's theory that without evidence of the Molotov cocktail having travelled in interstate commerce the statute proscribing possession would be unconstitutional misunderstands the constitutional bedrock for the statute to be the commerce power rather than the power to tax.

cocktail has no purpose apart from criminal activities. It is not a device that is commonly created for legitimate purposes but the use of which may be perverted from that intended, ordinary purpose to an illegitimate end. Cf. United States v. Schofer, 310 F.Supp. 1292 (E. D.N.Y.1969). Hence, it qualifies as a "similar device." *See* United States v. Coleman, 441 F.2d 1132 (5th Cir. 1971) *(sub silentio)*; United States v. Davis, 313 F.Supp. 710 (D.Conn.1970).

 Turning to the claimed insufficiency of the evidence, the testimony is clear that just seconds after two Molotov cocktails struck their target Ross was seen fleeing from the vicinity of the victimized building and was apprehended by Carter who had been sitting on the front stoop of the residence next door. No other person was in sight, although Ross told his captor that if he would look around the corner "he might see two guys coming down the street behind me, they might have something to do with it." Carter declined Ross' invitation to investigate elsewhere. At that time he smelled gasoline on defendant's hands. Ross attempted to show the innocence of his presence and flight by explaining that he was on his way home from a friend's house late at night when he heard glass shattering. Considering the hour and the recent racial tension in the area (a curfew was in effect), he became scared and took flight. Ross further explained that at his friend's house he had been working on a car and had gotten gasoline on his hands and clothes. Other witnesses indicated uncertainty whether Ross actually came into contact with auto parts which might have imparted a gasoline odor to him. Ross himself stated that all he did was tap the carburetor with his flashlight and remove the carburetor top and that he did not remove the fuel line. The jury was entitled to weigh the evidence of guilt along with the defendant's explanations and to take into consideration the defendant's three previous convictions when determining which testimony to disbelieve and which to credit. United States v. Jernigan, 411 F.2d 471 (5th Cir. 1969). Taking the view most favorable to the government, we cannot say there was not substantial evidence upon which a jury might reasonably base a finding that defendant was guilty beyond a reasonable doubt. Jones v. United States, 391 F.2d 273 (5th Cir. 1968). In a circumstantial evidence case like this "the test is not whether the evidence is inconsistent with the hypothesis of innocence but rather whether reasonable minds could so conclude." Surrett v. United States, 421 F.2d 403, 405 (5th Cir. 1970).

Accordingly, the judgment is affirmed.