**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert Stephen HALLMARK,**
**Defendant–Appellant.**

**No. 89–6401.**

United States Court of Appeals,
Tenth Circuit.

Aug. 13, 1990.

---

Jon D. Sellers, Oklahoma City, Okl., for defendant-appellant.

Timothy D. Leonard, U.S. Atty. and Frank Michael Ringer, Asst. U.S. Atty., Oklahoma City, Okl., for plaintiff-appellee.

Before ANDERSON and BRORBY, Circuit Judges, and PARKER *, District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

Robert Hallmark appeals his conviction on twelve counts of willfully falsifying tax returns relating to his wagering activity for each month of 1986 in violation of 26 U.S.C. § 7206(1). Hallmark attacks his convictions on three grounds: (1) the federal excise tax on wagering is an unconstitutional exercise of Congress' enumerated powers; (2) the statute authorizing the use of pen registers or trap and trace devices is unconstitutional and evidence gathered against him by means of such a device is therefore inadmissible; and (3) the evidence produced at trial is insufficient to support the jury's guilty verdict. For the reasons discussed below, we affirm the convictions.

## I. Constitutionality of the Excise Tax

██ Hallmark first contends that the wagering excise tax scheme enacted by Congress is unconstitutional. He attacks the tax as primarily regulatory and a usurpation of states' police powers. He also challenges the scheme as violative of the constitutional requirement of uniformity.[1] He asserts that his conviction, based on misstatements relating to the amount of tax which he owed, cannot stand because Congress had no power to enact the underlying statutory scheme requiring the disclosure.

---

* Honorable James A. Parker, United States District Court for the District of New Mexico, sitting by designation.

1. Hallmark does not challenge the reporting provisions of the tax scheme as violating his privilege against self-incrimination. We therefore do not address that issue.

An excise tax of ten percent on gross wagering receipts, applied without regard to the legality of the wagering activity in the particular state where it takes place, is a constitutional exercise of Congress' power to "lay and collect Taxes." U.S. Const. art. I, § 8; *United States v. Kahriger*, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953), *partially overruled on other grounds*, *Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). The only difference between the excise tax approved in *Kahriger* and the tax as it exists today is that the excise rate has been lowered from a flat ten percent to a bifurcated rate of two percent of receipts gathered on wagering activity which is illegal under the state law where it takes place, and one-quarter of one percent on legal wagering.[2] Hallmark points to the higher tax burden levied on illegal wagering as evidence of a primarily regulatory effect, motivated by Congress' desire to curb such activity.

This case does not require that we explore the boundary of Congress' power to impose a tax which carries with it a regulatory effect. Under longstanding principles of constitutional law, the wagering tax involved here poses no difficult question. As the district court concluded, nothing in the dual-rate tax scheme evidences an improper objective; the tax rates may reflect Congress' judgment relative to the different economic realities of legal and illegal wagering activities. *See generally, United States v. Constantine*, 296 U.S. 287, 297, 56 S.Ct. 223, 228, 80 L.Ed. 233 (1935) (Cardozo, J., dissenting) ("Congress may reasonably have believed that, in view of the attendant risks, a business carried on illegally and furtively is likely to yield larger profits than one transacted openly by law-abiding men."). Moreover, beyond the obvious revenue producing effect of the statute, we are "not free to speculate as to the motives which moved Congress to impose it or as to the extent to which it may operate to restrict the activities taxed." *Sonzinsky v. United States*, 300 U.S. 506, 514, 57 S.Ct. 554, 556, 81 L.Ed. 772 (1937); *see Kahriger*, 345 U.S. at 28, 73 S.Ct. at 513; *United States v. Ross*, 458 F.2d 1144 (5th Cir.), *cert. denied*, 409 U.S. 868, 93 S.Ct. 167, 34 L.Ed.2d 118 (1972); *Sipes v. United States*, 321 F.2d 174, 177 (8th Cir.), *cert. denied*, 375 U.S. 913, 84 S.Ct. 208, 11 L.Ed.2d 150 (1963).

■ Congress may, in any case, regulate or prohibit wagering activities pursuant to its enumerated powers; to do so by means of a tax would not violate the Constitution. *See Marchetti v. United States*, 390 U.S. 39, 44, 88 S.Ct. 697, 700, 19 L.Ed.2d 889 (1968) ("Wagering and its ancillary activities are very widely prohibited under both federal and state law."); *Sonzinsky*, 300 U.S. at 514, 57 S.Ct. at 556 (If the tax "is not attended by an offensive regulation ... it is within the national taxing power."); *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 423, 4 L.Ed. 579 (1819) (no judicial inquiry beyond determination that congressional objective lies within its enumerated powers).

Hallmark's invocation of the Tenth Amendment as an independent or concomitant restriction on Congress' power to levy this tax is meritless. As the Eighth Circuit noted, "So far as this issue is concerned, we find ourselves again in the not uncommon situation where this court, as an inferior federal court and at a late date, has little room in which to move." *Sipes*, 321 F.2d at 177. The argument raised by Hallmark pursuant to the Tenth Amendment has been made to the Supreme Court and rejected. *See United States v. Kahriger*, 345 U.S. at 37–40, 73 S.Ct. at 517–19 (Frankfurter, J., dissenting); *Sonzinsky v. United States*, 300 U.S. at 513–14, 57 S.Ct. at 555–56.

---

**2.** 26 U.S.C. § 4401(a) reads:
Wagers—
(1) State authorized wagers.—There shall be imposed on any wager authorized under the law of the State in which accepted an excise tax equal to 0.25 percent of the amount of such wager.

(2) Unauthorized wagers.—There shall be imposed on any wager not described in paragraph (1) an excise tax equal to 2 percent of the amount of such wager.

Nor does the tax scheme violate the constitutional requirement of uniformity; the excise applies uniformly throughout the states. U.S. Const. art. I, § 8. The fundamental difference in the nature of the activities taxed, illegal wagering or legal wagering, is a geographically neutral basis for assessing unequal tax rates. *Cf. United States v. Ptasynski,* 462 U.S. 74, 85–86, 103 S.Ct. 2239, 2245–46, 76 L.Ed.2d 427 (1983) (upholding favorable tax treatment for "exempt Alaskan oil," a unique class of oil); (*McCray v. United States,* 195 U.S. 27, 24 S.Ct. 769, 49 L.Ed. 78 (1904) (upholding a tax of ten cents per pound on yellow oleomargarine and a corresponding tax of one-quarter of one cent per pound on white oleomargarine). The excise tax provision on wagering activity is constitutional.

### II. Constitutionality of Pen Register and Trap and Trace Device Provision

■ The installation and use of a pen register and trap and trace device is not a "search" requiring a warrant pursuant to the Fourth Amendment. *Smith v. Maryland,* 442 U.S. 735, 739–46, 99 S.Ct. 2577, 2579–83, 61 L.Ed.2d 220 (1979) (reviewing installation of a pen register). Given the lack of any "legitimate expectation of privacy" at stake, *id.,* the extremely limited judicial review required by 18 U.S.C. § 3122 is intended merely to safeguard against purely random use of this device by ensuring compliance with the statutory requirements established by Congress. Thus a court, in reviewing a request for such a device, must determine "that the attorney for the Government ... has certified to the court that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation." 18 U.S.C. § 3123(a).[3]

■ Hallmark contends that the judicial review involved in pen register and trace requests is so narrowly limited and essentially ministerial as to subject the courts to the discretion of the Executive in violation of the constitutional separation of powers. We reject this argument. *Cf., e.g., Ullmann v. United States,* 350 U.S. 422, 431–434, 76 S.Ct. 497, 502–04, 100 L.Ed. 511 (1956) (where court's "duty [in reviewing requests for prosecutorial immunity] is only to ascertain whether statutory requirements are complied with ... we have no difficulty in concluding that the district court is confined within the scope of 'judicial Power.'") (quoting *Interstate Commerce Comm'n v. Brimson,* 154 U.S. 447, 14 S.Ct. 1125, 38 L.Ed. 1047 (1894)); *United States v. Taylor,* 728 F.2d 930, 934 (7th Cir.1984). Moreover, Hallmark was in no way harmed or prejudiced by the court's role in approving the use of the device. *See Smith v. Maryland,* 442 U.S. at 739–46, 99 S.Ct. at 2579–83 (upholding admissibility of pen register information obtained without prior judicial approval or authorization).

### III. Sufficiency of the Evidence

■ Finally, Hallmark contends that the evidence at trial is insufficient to support the jury's verdict because various witnesses repeatedly gave "estimates" or "averages" to describe the amount of wagers transacted with Hallmark during the period under consideration. In addition, he cites the inability of some witnesses to recall specific details concerning their wagering activities during that time. After reviewing the entire record before us, we conclude that the evidence produced at trial was overwhelming against Hallmark. The government did not have to prove the exact amount by which Hallmark misstated the tax returns; the witness' combined testimony demonstrated substantial understatements in the wagers he reported. Viewed in the light most favorable to the government, this evidence provided sufficient proof on which the jury could base its verdict of guilty. *United States v. Savaiano,* 843 F.2d 1280, 1297 (10th Cir.), *cert. denied,* 488 U.S. 836, 109 S.Ct. 99, 102 L.Ed.2d 74 (1988); *United States v. Hooks,*

---

**3.** We are not concerned here with the precise nature of the court's review under 18 U.S.C. § 3123. Accordingly, we express no opinion as to whether the court may, for instance, inquire into the government's factual basis for believing pen register or trace information to be relevant to a criminal investigation.

780 F.2d 1526, 1531 (10th Cir.), *cert. denied*, 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986). Hallmark's other contentions in this regard are equally meritless.

### IV. Conclusion

For the reasons discussed, the convictions are AFFIRMED.