Percy Ewell **WAINWRIGHT**

v.

**UNITED STATES of America.**

Civ. A. No. 5577.

United States District Court
E. D. Tennessee, N. D.

July 10, 1968.

Thomas W. Thomson, Knoxville, Tenn., for plaintiff.

J. H. Reddy, U. S. Atty., Chattanooga, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

The petitioner, Percy Ewell Wainwright, seeks a vacation of the sentence imposed upon him on February 24, 1964, for violation of portions of the National Firearms Act, 26 U.S.C. §§ 5841, 5851 and 5862. The basis of the petition is that the statute under which he was prosecuted violates the Fifth Amendment privilege against self-incrimination and is, therefore, unconstitutional.

Petitioner's motion to vacate was previously denied in a "Memorandum and Order" rendered on July 7, 1966. He appealed and on May 17, 1968 the Court of Appeals ordered the judgment of this Court vacated and the case remanded for further proceedings consistent with Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (January 29, 1968). This Court was directed to consider whether petitioner raised a self-incrimination defense, and also the applicability of Haynes, supra, to convictions prior to January 29, 1968.

We were advised by counsel for the petitioner and the Assistant District Attorney in a hearing held on June 17, 1968 that petitioner was released from prison on the 28th day of May, 1968. His attorney, Thomas Thompson, Esq., and the Clerk of this Court wrote letters to him but each letter was returned.

It is the contention of the Government that the proceeding under Title 28 U.S.C. § 2255 is a collateral attack upon the judgment of the trial court and that errors that could have been raised in the trial proceedings and on appeal by direct attack cannot be raised by indirect attack in this proceeding. Petititioner did not raise the self-incrimination defense before the trial court, although he testified and explained in detail how the unregistered gun described in the indictment was made.

The Government further contends that petitioner's voluntary testimony, including the admission of his manufacture and possession of the gun, constituted a waiver of the privilege against self-incrimination. Leary v. United States, 392 F.2d 220 (C.A.5, 1968).

In *Haynes*, supra, the defendant was charged with violation of 26 U.S.C. §§ 5841 and 5851. The Supreme Court reversed the conviction, holding that "a proper claim of the constitutional privilege against self-incrimination provides a full defense to prosecutions either for failure to register a firearm under § 5841 or for possession of an unregistered firearm under § 5851."

The controlling question presented to the Court on remand is whether the *Haynes* decision should apply retrospectively. We hold that *Haynes* does not apply retrospectively.

One of the leading Supreme Court decisions discussing retrospective application is Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), which held that Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), did not apply retrospectively. The Court, after discussing several theories of retrospective application, stated:

"Under our cases it appears (1) that a change in law will be given effect while a case is on direct review, Schooner Peggy, [United States v. Schooner Peggy, 1 Cranch. 103, 2 L.Ed. 49], supra, and (2) that the effect of

the subsequent ruling of invalidity on prior final judgments when collaterally attacked is subject to no set 'principle of absolute retroactive invalidity' but depends upon a consideration of 'particular relations * * * and particular conduct, * * * of rights claimed to have become vested, of status, of prior determinations deemed to have finality'; and 'of public policy in the light of the nature both of the statute and of its previous application.' Chicot County Drainage Dist. v. Baxter State Bank, supra, [308 U.S. 371] at 374, [60 S.Ct. 317, 84 L.Ed. 329.]"

* * * * * *

"Thus, the accepted rule today is that in appropriate cases the Court may in the interest of justice make the rule prospective. And 'there is much to be said in favor of such a rule for cases arising in the future.'"

The Court then set forth a test which has been cited and followed in subsequent cases:

"* * * we believe that the Constitution neither prohibits nor requires retrospective effect. As Justice Cardozo said, 'We think the Federal Constitution has no voice upon the subject.'

"Once the premise is accepted that we are neither required to apply, nor prohibited from applying, a decision retrospectively, we must then weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation. * * *"

The rule is further explained at 21 C. J.S.—Courts—194:

"Resolution of the issue requires the court to weigh merits and demerits in each case by looking to prior history of the rule in question, purpose and effect, and whether retrospective operation would further or retard its operation, and inquiry must be directed at the purposes of the new

doctrine, the reliance placed on the old law or doctrine, and the effect on the administration of justice of a retroactive application."

The Court, in applying its test to the *Mapp* case, supra, stated:

"We believe that the existence of the Wolf doctrine prior to Mapp is 'an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration.' Chicot County Drainage Dist. v. Baxter State Bank, supra, 308 U.S. at 374, 60 S.Ct. at 319. The thousands of cases that were finally decided on Wolf cannot be obliterated. The 'particular conduct, private and official,' must be considered. Here 'prior determinations deemed to have finality and acted upon accordingly' have 'become vested.' And finally, 'public policy in the light of the nature both of the * * * [Wolf doctrine] and of its previous application' must be given its proper weight. * * *"

* * * * * *

"* * * Indeed, all of the cases since Wolf requiring the exclusion of illegal evidence have been based on the necessity for an effective deterrent to illegal police action. See, e. g., Rea v. United States, supra [350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233]. We cannot say that this purpose would be advanced by making the rule retrospective. The misconduct of the police prior to Mapp has already occurred and will not be corrected by releasing the prisoners involved. Nor would it add harmony to the delicate state-federal relationship of which we have spoken as part and parcel of the purpose of Mapp. Finally, the ruptured privacy of the victims' homes and effects cannot be restored. Reparation comes too late."

* * * * * *

"* * * Again and again this Court refused to reconsider Wolf and gave its implicit approval to hundreds of cases in their application of its

rule. In rejecting the Wolf doctrine as to the exclusionary rule the purpose was to deter the lawless action of the police and to effectively enforce the Fourth Amendment. That purpose will not at this late date be served by the wholesale release of the guilty victims."

"Finally, there are interests in the administration of justice and the integrity of the judicial process to consider. To make the rule of Mapp retrospective would tax the administration of justice to the utmost. Hearings would have to be held on the excludability of evidence long since destroyed, misplaced or deteriorated. If it is excluded, the witnesses available at the time of the original trial will not be available or if located their memory will be dimmed. To thus legitimate such an extraordinary procedural weapon that has no bearing on guilt would seriously disrupt the administration of justice."

The Court then recognized that it had applied decisions retrospectively in three areas: coerced confessions, the requiring of the state to furnish transcripts of the trial to indigents on appeal, and the right to counsel at trial. It is noted that the question in the present case is not even remotely connected with any of the three areas. The Court then said:

"* * * in each of the three areas in which we have applied our rule retrospectively the principle that we applied went to the fairness of the trial —the very integrity of the fact-finding process. Here, as we have pointed out, the fairness of the trial is not under attack. All that petitioner attacks is the admissibility of evidence, the reliability and relevancy of which is not questioned, and which may well have had no effect on the outcome."

Another leading case is Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966), where Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) was held not to apply retrospec-

tively. The *Tehan* case seems to be more directly in point with the present case since it also involved a self-incrimination question (comment by the prosecutor or judge on defendant's failure to testify). The Court stated:

"* * * we take as our starting point Linkletter's conclusion that 'the accepted rule today is that in appropriate cases the Court may in the interest of justice make the rule prospective,' that there is 'no impediment —constitutional or philosophical—to the use of the same rule in the constitutional area where the exigencies of the situation require such an application,' in short that 'the Constitution neither prohibits nor requires retrospective effect.'"

Tests laid down in the *Linkletter* decision, supra, were discussed and holdings on the involved question for a fifty-year period traced. The Court, in discussing the "purpose" of the privilege against self-incrimination, said:

"Insofar as these 'purposes' of the Fifth Amendment privilege against compulsory self-incrimination bear on the question before us in the present case, several considerations become immediately apparent. First, the basic purposes that lie behind the privilege against self-incrimination do not relate to protecting the innocent from conviction, but rather to preserving the integrity of a judicial system in which even the guilty are not to be convicted unless the prosecution 'shoulder the entire load.' * * *"

* * * * * *

"* * * And finally, insofar as strict application of the federal privilege against self-incrimination reflects the Constitution's concern for the essential values represented by 'our respect for the inviolability of the human personality and of the right of each individual "to a private enclave where he may lead a private life,"' any impingement upon those values resulting from a State's application of a variant from the federal standard

cannot now be remedied. As we pointed out in Linkletter with respect to the Fourth Amendment rights there in question, 'the ruptured privacy * * * cannot be restored.' "

\* \* \* \* \* \*

"* * * The basic purpose of a trial is the determination of truth, and it is self-evident that to deny a lawyer's help through the technical intricacies of a criminal trial or to deny a full opportunity to appeal a conviction because the accused is poor is to impede that purpose and to infect a criminal proceeding with the clear danger of convicting the innocent. * * * By contrast, the Fifth Amendment's privilege against self-incrimination is not an adjunct to the ascertainment of truth. That privilege, like the guarantees of the Fourth Amendment, stands as a protection of quite different constitutional values —values reflecting the concern of our society for the right of each individual to be let alone. To recognize this is no more than to accord those values undiluted respect."

A third Supreme Court case following the decisions in *Linkletter* and *Tehan*, supra, is Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L. Ed.2d 882 (1966), which held that Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. State of Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694, did not apply retrospectively. In discussing *Tehan* and *Linkletter*, supra, the Court said:

"* * * These cases establish the principle that in criminal litigation concerning constitutional claims, 'the Court may in the interest of justice make the rule prospective * * * where the exigencies of the situation require such an application.' * * * We must look to the purpose of our new standards governing police interrogation, the reliance which may have been placed upon prior decisions on the subject, and the effect on the administration of justice * * *."

\* \* \* \* \* \*

"Accordingly as Linkletter and Tehan suggest, we must determine retroactivity 'in each case' by looking to the peculiar traits of the specific 'rule in question.' * * *"

The Court then refused to apply *Escobedo* and *Miranda* supra, even to those cases on direct appeal, pointing out that there were very few states which had the standards that these decisions set forth:

"At the same time, retroactive application of Escobedo and Miranda would seriously disrupt the administration of our criminal laws. It would require the retrial or release of numerous prisoners found guilty by trustworthy evidence in conformity with previously announced constitutional standards. * * *"

\* \* \* \* \* \*

"All of the reasons set forth above for making Escobedo and Miranda nonretroactive suggest that these decisions should apply only to trials begun after the decisions were announced. * * *"

\* \* \* \* \* \*

"* * * In these circumstances, to upset all of the convictions still pending on direct appeal which were obtained in trials preceding Escobedo and Miranda would impose an unjustifiable burden on the administration of justice."

Another case in point decided on June 12, 1967 is Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, in which it was held that United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967) and Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), extending the right to counsel to the preliminary identification or "lineup" in a criminal action, do not apply retroactively even to cases which were pending at the time of the decisions. The Court followed Link-

*letter, Tehan* and *Johnson,* supra, and applied the test. The Court pointed out:

"* * * Law enforcement authorities fairly relied on this virtually unanimous weight of authority, now no longer valid, in conducting pretrial confrontations in the absence of counsel. It is, therefore, very clear that retroactive application of Wade and Gilbert 'would seriously disrupt the administration of our criminal laws.'"

\* \* \* \* \* \*

"We also conclude that, for these purposes, no distinction is justified between convictions now final, as in the instant case, and convictions at various stages of trial and direct review. * * * Sound policies of decision-making rooted in the command of Article III of the Constitution that we resolve issues solely in concrete cases or controversies, and in the possible effect upon the incentive of counsel to advance contentions requiring a change in the law, militate against denying Wade and Gilbert the benefit of today's decisions. * * *"

An application of the above tests to the present case shows that the *Haynes* decision, supra, does not apply retrospectively.

In turning to the prior history of the Firearms Act we find many cases upholding it. In the more recent cases, however, a distinction appears to be drawn between the constitutionality of § 5851 and § 5841 for the benefit of those who properly assert their privilege against self-incrimination. Since petitioner was convicted under § 5851 along with § 5841, an analysis of each statute is not necessary in the present case.

National Firearms Act was passed on June 26, 1934, and was interpreted by the Supreme Court for the first time in 1937 in Sonzinsky v. United States, 300 U.S. 506, 57 S.Ct. 554, 81 L.Ed. 772. In this case the Court upheld the section of the Act which imposed a license tax on dealers in firearms as a constitutional exercise of the legislative power of Congress. There was no self-incrimination defense raised.

In United States v. Miller, 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939), the Act was again unsuccessfully attacked. The defendant was charged with transporting a firearm without registering it and without having a stamp-affixed written order for it. Defendant argued that the Act was an attempt to usurp police power reserved for the state and was, therefore, unconstitutional. Defendant further argued that the Second Amendment concerning the right to bear arms was violated. The District Court held that there was a violation of the Second Amendment, but the Supreme Court reversed citing the *Sonzinsky* decision, supra.

The Supreme Court did not again consider the Firearms Act until its recent decision in Haynes v. United States, supra. However, the Court did have occasion to consider the wagering tax statutes which in many respects are identical to the Firearms Act. In United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953), and Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955), the statutes were sustained against a self-incrimination attack.

The Supreme Court also denied certiorari in three recent cases which again sustained 26 U.S.C. § 5851 in the face of a self-incrimination attack: Frye v. United States, 315 F.2d 491 (C.A.9, 1963), certiorari denied 375 U.S. 849, 84 S.Ct. 104, 11 L.Ed.2d 76; Sipes v. United States, 321 F.2d 174 (C.A.8, 1963), certiorari denied 375 U.S. 913, 84 S.Ct. 208, 11 L.Ed.2d 150, and Castellano v. United States, 350 F.2d 852 (C.A.10, 1965), certiorari denied 383 U.S. 949, 86 S.Ct. 1207, 16 L.Ed.2d 211.

Courts of Appeals in many circuits had held prior to the *Haynes* decision, supra, that 26 U.S.C. § 5851 did not violate the self-incrimination privilege. Decker v. United States, 378 F.2d 245 (C.A.6, 1967); Pruitt v. United States, 364 F.2d 826 (C.A.6, 1966); Mares v.

United States, 319 F.2d 71 (C.A.10, 1963); and Starks v. United States, 316 F.2d 45 (C.A.9, 1963).

The foregoing cases indicate that the rule is not to be given retrospective application.

The case of Tehan v. United States ex rel. Shott, supra, seems to be directly in point in weighing the purpose and effect of the rule, which is the second test. Here, respondent refused to take the stand in a state proceeding and the prosecutor commented extensively on his failure to testify. After exhausting state remedies, respondent sought a writ of habeas corpus alleging constitutional violations at his trial. The District Court refused but the Sixth Circuit reversed because on the day before oral argument, Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653, applied the Fifth Amendment privilege of self-incrimination to the states. The Supreme Court reversed, pointing out that respondent's conviction was almost one year before Malloy, supra, and almost two years before Griffin, supra. In the present case, there has been more than four years from the date of the petitioner's conviction to the date the case was remanded.

The third test is whether retrospective operation will further or retard the Haynes decision's effect. Since many cases were decided under the belief that Section 5851 was constitutional, to permit convictions which have become final to be subject to collateral attack would invite confusion if not disaster.

The language of Haynes, supra, and also Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889, and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906, all handed down on the same day, give support to this conclusion. In Marchetti, supra, the Court after pointing out that defendant had raised his self-incrimination privilege at the trial, stated:

"* * * For reasons which follow we have concluded that these provisions may not be employed to punish criminally those persons who have defended a failure to comply with their requirements with a proper assertion of the privilege against self-incrimination. * * *" 390 U.S. pp. 41, 42, 88 S.Ct. p. 699.

"* * * Petitioner is under sentence for violation of statutory requirements which he consistently asserted at and after trial to be unconstitutional; no more can here be required." p. 51, 88 S.Ct. p. 704.

"Nonetheless, we can only conclude, under the wagering tax system as presently written, that petitioner properly asserted the privilege against self-incrimination, and that his assertion should have provided a complete defense to this prosecution. * * * We emphasize that we do not hold that these wagering tax provisions are as such constitutionally impermissible; we hold only that those who properly assert the constitutional privilege as to these provisions may not be criminally punished for failure to comply with their requirements. If, in different circumstances, a taxpayer is not confronted by substantial hazards of self-incrimination, or if he is otherwise outside the privilege's protection, nothing we decide today would shield him from the various penalties prescribed by the wagering tax statutes." pp. 60, 61, 88 S.Ct. p. 709.

The Court points out in Grosso, supra:

"* * * Petitioner moved before trial to dismiss the counts which charged conspiracy to defraud and failure to pay the excise tax, asserting that payment would have obligated him to incriminate himself, in violation of the privilege against self-incrimination guaranteed by the Fifth Amendment. He reiterated this contention in support of unsuccessful motions for acquittal after verdict and for a new trial * * *" 390 U.S. p. 63, 88 S.Ct. p 711.

Finally, in *Haynes* itself, supra, the Court again points out:

"* * * Petitioner moved before trial to dismiss this count, evidently asserting that § 5851 violated his privilege against self-incrimination, as guaranteed by the Fifth Amendment. The motion was denied, and petitioner thereupon entered a plea of guilty. * * *" 390 U.S. pp. 86, 87, 88 S.Ct. p. 724.

"* * * Rather, we are required to resolve only the narrow issue of whether enforcement of § 5851 against petitioner, despite his assertion of the privilege against self-incrimination, is constitutionally permissible. * * *" p. 90, 88 S.Ct. p. 726.

"* * * Instead, it appears, from the evidence now before us, that the rights of those subject to the Act will be fully protected if a proper claim of privilege is understood to provide a full defense to any prosecution either for failure to register under § 5841 or, under § 5851, for possession of a firearm which has not been registered." p. 99, 88 S.Ct. p. 731.

It is further pointed out that Russell v. United States, 9 Cir., 306 F.2d 402 (1962), the first case holding § 5841 a violation of the privilege against self-incrimination, was handed down a full year and one-half before petitioner's conviction. Petitioner, therefore, could have raised that defense at his trial, but he did not. Also, the Supreme Court a year after petitioner's conviction denied certiorari in a case raising the self-incrimination defense—*Castellano*, supra. This would tend to indicate that at the time of petitioner's conviction the status of the law was not so uncertain as to now four years later justify a reversal.

While it is true that several cases subsequent to *Haynes* have allowed defendants to successfully assert their self-incrimination privilege on appeal even though they did not raise the defense at the trial, all involved have been on direct appeal and not as a result of a motion under 28 U.S.C. § 2255 as in the present case. Decisions so holding are United States v. Manfredonia, 2 Cir., 391 F.2d 229 (1968); Segal v. United States, 8 Cir., 391 F.2d 266 (1968); Harris v. United States, 8 Cir., 390 F.2d 616 (1968). The same result was reached in Dillon v. United States, 8 Cir., 389 F.2d 381 (1968), but here the defense was raised at the trial itself.

■■ An examination of the transcript of the record made at the trial shows that petitioner did not raise the defense of self-incrimination. The first time the self-incrimination defense was raised was some two years after conviction. In the opinion of the Court the decision in Haynes v. United States, supra, is not retroactive and, therefore, does not apply to petitioner's motion.

The motion to vacate is accordingly denied.