**Jerald D. ZWAK, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 87–3131.

United States Court of Appeals, Eleventh Circuit.

July 8, 1988.

Hugo Pesola, Jr., Tampa, Fla., for plaintiff-appellant.

George T. Rita, Michael L. Paup, Chief, Roger M. Olsen, Asst. Atty. Gen., Richard Farber, Kenneth W. Rosenberg, U.S. Dept. of Justice Tax Div., Appellate Section, Washington, D.C., for defendant-appellee.

Before RONEY, Chief Judge, HATCHETT, Circuit Judge, and HAND [*], Chief District Judge.

HAND, Chief District Judge.

In this tax refund case, the taxpayer appeals the district court's grant of summary judgment to the Government. The district court held that the taxpayer was liable for federal excise taxes assessed with respect to the making and transfer of eleven handgun silencers and that the defense of entrapment was unavailable to the taxpayer in this civil action. Because we find, under the particular facts of this case, that the defense of entrapment is available to the taxpayer, we reverse.

## FACTS

An undercover operation, conducted in 1979 by agents of the Alcohol, Tobacco & Firearms Division of the Treasury Department, resulted in criminal charges against the taxpayer, Jerald D. Zwak (Zwak), for crimes of making and transferring firearms without paying the tax thereon and possession of firearms which do not have serial numbers. The six count indictment returned against Zwak alleged violations of 26 U.S.C. § 5861(e), (f) and (i) [1] in connection with the manufacture and transfer of eleven handgun silencers. At his criminal trial, Zwak raised the defense of entrapment. The jury returned a verdict of acquittal.

---

[*] Honorable William Brevard Hand, Chief U.S. District Judge for the Southern District of Alabama, sitting by designation.

1. Specifically, these sections of the Internal Revenue Code provide:

 It shall be unlawful for any person—

 . . . . .

 (e) to transfer a firearm in violation of the provisions of this chapter [including failure to pay the $200 transfer tax of § 5811]; or
 (f) to make a firearm in violation of the provisions of this chapter [including failure to pay the $200 making tax of § 5821]; or
 (i) to receive or possess a firearm which is not identified by a serial number as required by this chapter; ...
 26 U.S.C. § 5861(e), (f) and (i).

Subsequent to the taxpayer's acquittal on the criminal charges, the Internal Revenue Service (IRS) made a civil excise tax assessment against Zwak with respect to his making and transfer of the same firearms, the eleven handgun silencers, which were the subject of the criminal prosecution. On August 23, 1982, the IRS gave notice and demand for payment of the taxes, interest and penalty due. On May 1, 1984, the IRS issued a notice of seizure of certain real property owned by Zwak. On May 21, 1984, Zwak paid the full amount owing, a total of $7,711.29.

Zwak filed with the IRS a claim for refund on January 30, 1985, alleging that the manufacture and sale of the silencers were the result of entrapment and that the agents involved in the investigation had violated his constitutional right to due process of law. The IRS rejected the claim on September 18, 1985. Zwak commenced this action on March 19, 1986 seeking a tax refund and incorporating in the complaint the allegations of entrapment previously made in his claim to the IRS. The Government filed a motion for summary judgment which was granted on December 23, 1986. On February 23, 1987, Zwak timely filed his notice of appeal challenging only that portion of the district court's decision by which he was denied the defense of entrapment.

## ISSUES

Zwak essentially presents two issues on appeal. The principle issue, one of first impression for this Court and one not previously addressed by any other court, is whether the defense of entrapment may be used offensively in this civil tax refund action. A second issue, predicated essentially on this Court's resolution of the principle issue, is whether the record supports a finding in this case of entrapment as a matter of law.[2]

## DISCUSSION

### I. Availability of Entrapment Defense

Zwak's position with respect to the availability of the defense of entrapment in this civil context rests essentially on two alternative theories: (1) that the taxes imposed under 26 U.S.C. §§ 5811[3] and 5821[4]—the former a "transfer" tax and the latter a "making" tax—are really punitive and, therefore, criminal in nature; and (2) that, even if the taxes are civil in nature, the Government ought not to be permitted to collect such taxes from him since the Government induced him to do the very acts for which the taxes were assessed. The Government takes the position, as did the district court, that the entrapment defense is a defense to criminal culpability and, therefore, applies only in criminal cases, not in civil tax proceedings which do not require *mens rea*.

 Zwak's theory that the taxes here imposed are punitive in nature is predicated solely upon the distinction contained in § 5811 between the $200 tax assessed for each "firearm" transferred and the $5 tax assessed for "any other weapon" (as defined in § 5845(e)) transferred. Zwak con-

---

**2.** During oral arguments, Zwak sought to interject a third issue, that of whether the taxes here imposed violate the double jeopardy clause. Inasmuch as this issue was not timely presented to this Court, or raised to the district court below, the issue is not properly before this Court and will not be addressed.

**3.** Section 5811 of the Internal Revenue Code provides, in pertinent part:

(a) Rate. There shall be levied, collected, and paid on firearms transferred a tax at the rate of $200 for each firearm transferred, except, the transfer tax on any firearm classified as any other weapon under section 5845(e) shall be at the rate of $5 for each such firearm transferred.

(b) By whom paid. The tax imposed by subsection (a) of this section shall be paid by the transferor.

26 U.S.C. § 5811(a) and (b).

**4.** Section 5821 provides, in pertinent part:

(a) Rate. There shall be levied, collected, and paid upon the making of a firearm a tax at the rate of $200 for each firearm made.

(b) By whom paid. The tax imposed by subsection (a) of this section shall be paid by the person making the firearm.

26 U.S.C. § 5821(a) and (b).

tends that the distinction between "firearm" and "any other weapon" is equivalent to a distinction between "illegal" and "legal" firearms and that the difference of $195 is, therefore, intended as a penalty for transferring illegal firearms.

Despite the Government's protestations to the contrary, it does appear that a distinction is drawn in the Internal Revenue Code between "illegal" and "legal" firearms for purposes of the rate of tax assessed upon their transfer. This apparent distinction, however, does not support Zwak's contention that both the transfer tax and the making tax here imposed are punitive in nature. In the first instance, no such distinction between "illegal" and "legal" firearms is drawn for purposes of assessing the tax upon their making. In addition, it is evident that any such distinction with respect to the transfer tax would not necessitate a conclusion either that the tax is punitive rather than remedial in nature or that the tax constitutes an impermissible exercise of Congress' broad taxing powers. As the Supreme Court long ago recognized in *Sonzinsky v. United States,* 300 U.S. 506, 57 S.Ct. 554, 81 L.Ed. 772 (1937):

> Every tax is in some measure regulatory. To some extent it interposes an economic impediment to the activity taxed as compared with others not taxed. But a tax is not any the less a tax because it has a regulatory effect ... and it has long been established that an Act of Congress which on its face purports to be an exercise of the taxing power is not any the less so because the tax is burdensome or tends to restrict or suppress the thing taxed.

300 U.S. at 513, 57 S.Ct. at 555–56. The Supreme Court later reaffirmed its interpretation of the breadth of Congress' taxing power in a case which challenged the levy of an occupational tax on persons engaged in the business of accepting wagers, and held that:

> [A] federal excise tax does not cease to be valid merely because it discourages or deters the activities taxed. Nor is the tax invalid because the revenue obtained is negligible.... It is axiomatic that the power of Congress to tax is extensive and sometimes falls with crushing effect on businesses deemed unessential or inimical to the public welfare, or where, as in dealings with narcotics, the collection of the tax also is difficult. As is well known, the constitutional restraints on taxing are few.

*United States v. Kahriger,* 345 U.S. 22, 28, 73 S.Ct. 510, 513, 97 L.Ed. 754, 760–61 (1953).

The Fifth Circuit Court of Appeals relied upon both *Sonzinsky* and *Kahriger* to reject an argument that certain criminal provisions of the Federal Gun Control Act of 1968 were invalid because the tax provisions of the Act imposed a confiscatory tax on the transfer of a firearm. *United States v. Ross,* 458 F.2d 1144 (5th Cir.1972). The Fifth Circuit held, in pertinent part:

> The motives that move Congress to impose a tax are no concern of the Courts. *Sonzinsky, supra.* Furthermore, that an act accomplishes another purpose than raising revenue does not invalidate it. [Citation omitted]. Section 5861(d) making possession of an unregistered weapon unlawful is part of the web of regulation aiding enforcement of the transfer tax provision in § 5811. Having required payment of a transfer tax and registration as an aid in collection of that tax, Congress under the taxing power may reasonably impose a penalty on possession of unregistered weapons. Such a penalty imposed on transferees ultimately discourages the transferor on whom the tax is levied from transferring a firearm without paying the tax.

458 F.2d at 1145. The Sixth Circuit Court of Appeals has also determined that the excise taxes imposed by the 1968 amendments to the National Firearms Act, 26 U.S.C. §§ 5801 et seq., are reasonable and within the taxing power of Congress. See e.g., *United States v. Black,* 472 F.2d 130 (6th Cir.1972), *cert. denied, sub nom Leach v. United States,* 411 U.S. 969, 93 S.Ct. 2161, 36 L.Ed.2d 691 (1973); *United States v. Wilson,* 440 F.2d 1068 (6th Cir.1971).

Based upon the above precedent, we too conclude that the taxes assessed pursuant to 26 U.S.C. §§ 5811 and 5821 are civil in nature and within the taxing discretion of Congress. We find no merit in Zwak's contention that these taxes are punitive and therefore criminal in nature.

■ We do, however, find merit in Zwak's alternative contention that, even if these taxes are civil in nature, the Government ought not to be permitted to collect such taxes if the Government induced him to do the very illegal acts for which the taxes were assessed. The Government's position on this point, a position adopted by the district court as the basis for its decision, is inapposite. The Government argues that the entrapment defense has only been addressed by the Courts in the context of criminal actions and that no authority exists to support Zwak's contention that the entrapment defense is applicable to a civil action. We agree that the courts who have to date addressed the entrapment defense have done so only in the criminal context. We disagree, however, with the proposition that no authority exists to support the applicability of this defense in the present civil context. At issue is not whether any other court has addressed the entrapment defense in a civil context, but rather whether the principles supporting application of this defense in a criminal context are equally applicable in a civil context.

In a seminal decision on the applicability of the entrapment defense, the Supreme Court rejected arguments that Congress "is the arbiter of public policy and that, where conduct is expressly forbidden and penalized by a valid statute, the courts are not at liberty to disregard the law and to bar a prosecution for its violation because they are of the opinion that the crime has been instigated by government officials." *Sorrells v. United States*, 287 U.S. 435, 445–46, 53 S.Ct. 210, 214, 77 L.Ed. 413, 419 (1932) (challenging conviction for possessing and selling intoxicating liquor in violation of the National Prohibition Act). The Supreme Court recognized that these argu-

ments were predicated upon a literal interpretation of the statute, but concluded that:

They take no account of the fact that [the statute's] application in the circumstances under consideration is foreign to its purpose; that such an application is so shocking to the sense of justice that it has been urged that it is the duty of the court to stop the prosecution in the interest of the Government itself, to protect it from the illegal conduct of its officers and to preserve the purity of its courts.

287 U.S. at 446, 53 S.Ct. at 214. Consequently, an important principle regarding statutory construction was reaffirmed:

All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language which would avoid results of this character. The reason of the law in such cases should prevail over its letter.

287 U.S. at 447, 53 S.Ct. at 214, quoting *United States v. Kirby*, 7 Wall. 482, 19 L.Ed. 278 (1868). Based upon this established principle of statutory construction, the Supreme Court ultimately held:

We are unable to conclude that it was the intention of the Congress in enacting this statute that its processes of detection and enforcement should be abused by the instigation by government officials of an act on the part of persons otherwise innocent in order to lure them to its commission and to punish them. We are not forced by the letter to do violence to the spirit and purpose of the statute. This, we think, has been the underlying and controlling thought in the suggestions in judicial opinions that the Government in such a case is estopped to prosecute or that the courts should bar the prosecution. If the requirements of the highest public policy in the maintenance of the integrity of administration would preclude the enforcement of the statute in such circumstances as are present here, the same considerations justify the conclusion that the case lies outside the purview of the Act and that its general

1184

words should not be construed to demand a proceeding at once inconsistent with that policy and abhorrent to the sense of justice.

287 U.S. at 448–49, 53 S.Ct. at 215. *See also, Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

In more recent years, the Supreme Court has again addressed the applicability of the entrapment defense, albeit once again in the criminal context. *See, United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973) (challenging conviction for manufacturing and selling methamphetamine). Although called upon specifically to address what has been held to be the principal element in the defense of entrapment, that of the defendant's predisposition to commit the crime, the Supreme Court reaffirmed the basis for this defense, the principle of "implied intent of Congress" established in the *Sorrells* and *Sherman* cases, and emphasized that:

[E]ntrapment is a relatively limited defense. It is rooted not in any authority of the Judicial Branch to dismiss prosecutions for what it feels to have been "overzealous law enforcement," but instead in the notion that Congress could not have intended criminal punishment for a defendant who has committed all the elements of a prescribed offense but was induced to commit them by the government.

411 U.S. at 435, 93 S.Ct. at 1644.

Although the taxing powers of Congress are undisputedly extensive, we must conclude that "a literal interpretation of [26 U.S.C. §§ 5811 and 5821] at the expense of the reason of the law and producing absurd consequences or flagrant injustice" is to be condemned. *Sorrells,* 287 U.S. at 446, 53 S.Ct. at 214. It would seem that the principle of "implied intent of Congress", which forms the basis for the entrapment defense in the criminal context, is equally applicable to circumstances in which an act, itself taxable in a strictly civil context, is committed by an otherwise innocent person at the instigation of government officials. As in the criminal context, entrapment in this civil context must be rooted in the notion that Congress could not have intended to impose an excise tax upon a taxpayer who has committed the act subject to taxation, here the making and transfer of a firearm, but was induced to commit the illegal act by the government. *Russell,* 411 U.S. at 435, 93 S.Ct. at 1644. To allow government officials to instigate an illegal act and lure an otherwise innocent person to commit the illegal act in order to assess and collect taxes thereupon would do violence to the spirit and purpose of the revenue statutes, in this instance 26 U.S.C. §§ 5811 and 5821. Consequently, we reverse that portion of the district court's decision in this case which granted summary judgment to the Government on grounds of inapplicability of the entrapment defense.

## II. Entrapment as a Matter of Law

■ Zwak also encourages this Court to rule that, because of his acquittal by the jury in the criminal trial in which his only defense was entrapment, he was as a matter of law entrapped by the Government into manufacturing and transferring the silencers which produced the tax assessment here at issue. However, as argued by the Government, the law is well settled that:

[A]n acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt.... It is clear that the difference in the relative burdens of proof in the criminal and civil actions precludes the application of the doctrine of collateral estoppel.

*United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 361–62, 104 S.Ct. 1099, 1104, 79 L.Ed.2d 361, 368 (1984) (per curiam). *See also, One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 235, 93 S.Ct. 489, 492, 34 L.Ed.2d 438, 442 (1972); *Helvering v. Mitchell,* 303 U.S. 391, 397, 58 S.Ct. 630, 632, 82 L.Ed. 917, 920–21 (1938).

Zwak's criticism that, because a conviction on criminal charges does prove the defendant's guilt for collateral estopped purposes, the Government ensures its advantageous position by prosecuting the criminal case prior to litigating any related civil action is irrelevant. Absent a double jeopardy bar, the Government's tactics are

not proscribed by law. *See, e.g., One Assortment of 89 Firearms,* 465 U.S. at 360, 104 S.Ct. at 1103.

In addition, contrary to Zwak's contentions, the evidence of record does not establish entrapment as a matter of law. If, on remand, Zwak continues to assert the defense of entrapment, he will be obligated to prove his defense, as is true of any affirmative defense in civil actions, by a preponderance of the believable evidence.

In conclusion, the district court's grant of summary judgment in favor of the United States of America is REVERSED and the case is REMANDED.

HATCHETT, Circuit Judge, dissenting:

I disagree with the majority's holding regarding the availability of an entrapment defense in this civil tax refund action, and write separately to emphasize that the majority's decision does not apply to civil forfeiture proceedings.[1]

In a forfeiture action, the government is allowed under certain circumstances to seize private property. What the government may seize it may also tax. It is axiomatic that neither collateral estoppel nor double jeopardy bars the government from initiating a civil, remedial forfeiture action following an acquittal on related criminal charges. *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984); *One Lot Emerald Cut Stones & One Ring v. United States,* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972); *United States v.*

*Fifty Thousand Dollars ($50,000) U.S. Currency,* 757 F.2d 103 (6th Cir.1985). This case presents somewhat of an anomaly, however, because Zwak's acquittal of criminal charges *may* have been predicated upon the jury's determination that he was entrapped into committing the subject crimes. Thus, the question becomes whether the principles enunciated in *One Assortment of 89 Firearms,* a forfeiture case, still govern in this action, notwithstanding Zwak's assertion of an entrapment defense in the criminal action.[2]

At issue in *One Assortment of 89 Firearms* was whether a gun owner's acquittal of criminal charges involving firearms precluded a subsequent *in rem* forfeiture proceeding against those same firearms. At his criminal trial, the gun owner, Mulcahey, admitted that he had no license to deal in firearms but contended, as Zwak does, that he had been *entrapped* into making the illegal firearms transactions. Reasoning that it "need not be concerned whether the jury decided to acquit Mulcahey because he was entrapped into making an illegal sale or whether the jurors were not convinced of his guilt beyond a reasonable doubt for other reasons," the Court held that the jury's verdict did not negate the possibility that a preponderance of the evidence might show that Mulcahey had engaged in illegal firearms transactions. *One Assortment of 89 Firearms,* 465 U.S. at 361–62, 104 S.Ct. at 1104–05. Thus, the Court concluded that Mulcahey's acquittal on the criminal charges involving the firearms did not preclude a subsequent *in rem* forfeiture proceeding against the same firearms. *One*

---

1. In *United States v. Russell,* 411 U.S. 423, 435, 93 S.Ct. 1637, 1644, 36 L.Ed.2d 366 (1973), the Supreme Court stated that entrapment is a limited defense which is rooted "in the notion that Congress could not have intended *criminal* punishment for a defendant who has committed all the elements of a prescribed offense but was induced to commit them by the government." *Russell,* 411 U.S. at 435, 93 S.Ct. at 1644 (emphasis added). To date, all courts which have addressed the entrapment defense have done so in the context of criminal cases, with some federal courts expressly holding that an entrapment defense is not available in a civil proceeding. *See, e.g., Kondrat v. O'Neill,* 815 F.2d 78 (6th Cir. 1987) (text in Westlaw); *Gucci Shops, Inc. v. Dreyfoos & Associates, Inc.,* No. 83–709–CIV–

ALH (S.D.Fla.1983) (unreported) [available on WESTLAW, 1983 WL 425].

2. Assuming that an entrapment defense is available to Zwak in this civil tax refund action, Zwak would first have to establish that he was acquitted of the criminal charges based on an entrapment defense. Zwak's acquittal on the criminal charges may not be deemed the product of his entrapment defense any more so than the product of jury lenity or the existence of a reasonable doubt as to his guilt. Therefore, to proceed in this civil action upon the basis that Zwak's acquittal was due to his entrapment defense simply because this was Zwak's sole defense to the criminal charges is a leap in faith which I am unwilling to take.

*Assortment of 89 Firearms,* 465 U.S. at 362, 104 S.Ct. at 1104.

As it relates to Zwak, *One Assortment of 89 Firearms* is significant for at least one reason. As in *Zwak,* the gun owner's sole defense in *One Assortment of 89 Firearms* was that he had been entrapped into making the illegal firearms transactions. Notably, the Court did not intimate that the gun owner's entrapment defense would preclude an *in rem* forfeiture proceeding against the firearms. Had this been the case, it seems likely that the Court would have given some indication that the entrapment defense was available in the *in rem* forfeiture proceeding. Instead, the Court pointed out that the jury's acquittal of criminal charges could have been for any number of reasons, including entrapment, but that the jury's reasons were irrelevant for purposes of the *in rem* forfeiture proceeding.

Accordingly, the decision today that an entrapment defense is available to Zwak in this tax case should be limited to the particular facts of this case. *One Assortment of 89 Firearms* makes clear that an acquittal of criminal charges does not bar a subsequent civil forfeiture action, even where acquittal of the criminal charges may have been due to the assertion of an entrapment defense. The same reasoning should apply in this tax case.