PER CURIAM:
Appellant, Alfred Luongo, seeks reversal of the July 6, 2012 Order of the Tulalip Tribal Court in which the Tribal Court ordered that a 2008 Ford Econoline Van owned by Appellant be forfeited to the Tulalip Tribes (hereinafter also “Appel-lee”) under the civil forfeiture provisions of Chapter 2,15 of the Tulalip Tribal Code. This Court holds that the excessive fines clause of the Indian Civil Rights Act applies to civil forfeitures under Chapter 2.15, and we remand this matter to the Tribal Court for a determination of whether the forfeiture of Appellant’s van constitutes an excessive fine in this case.
Reconsideration of Ruling on Oral Argument
Appellant represented himself before the trial court and initially appeared pro se before this Court, filing a Notice of Appeal, a one page “addition” to his Notice of Appeal, and an opening brief on his own behalf in substantial compliance with the *201 Tulalip Tribal Rules for Appeals and this Court’s October 15, 2012 Scheduling Order. On December 7, 2012, the Tulalip Tribal Prosecutor’s Office filed the Tribes’ response brief.
On January 8, 2013, Philip Wakefield, Attorney at Law, filed a notice of appearance on behalf of Appellant. The notice of appearance included a request for a continuance of the oral argument that had been scheduled for January 11, 2013, and a demand for discovery. It being apparent that counsel for Appellant was not aware that trial had been concluded, judgment entered, and the order of forfeiture appealed, we denied Appellant’s demand for discovery. We did, however, continue the oral argument to February 8, 2013 and, sua sponte, granted an extension of time for Appellant to file a reply brief.
Appellant did not file a reply brief, and neither he nor his attorney appeared at the oral argument.[1] When the case was called for oral argument, the Court invited the Tribes’ prosecutor to “make any motions you may wish.” The prosecutor stated that the Tribes “are prepared to proceed and would object to any continuance.”[2] The prosecutor asked the Court to not entertain any last minute motion for continuance that might be made. At that point, although the Tribes had indicated their readiness to proceed and had not moved for dismissal, we informed the Tribes that we would “grant the motion to dismiss at this time for lack of prosecution since no one is here to move the case forward.” We now reconsider that oral ruling sua sponte.
Although the Tulalip Rules for Appeals state that oral argument “shall be held,” TTC 2.20.080, the rules do not actually require a person to present oral argument. The rules state only that a party “may” present oral argument. TTC 2.20.080. The rules do not directly address how this Court is to proceed if a party fails to appear or declines to present argument. The rules do, however, presume that this Court will issue a ruling on the merits of each appeal unless the Court finds grounds within the rules for dismissal. TTC 2.20.100 (“Cases appealed pursuant to these rules shall be decided on the basis of the Trial Court record and any written or oral arguments presented by the parties in accordance with the requirements of these rules,”). Thus, in Tulalip Casino v. Hood, 4 NICS App. 123 (Tulalip Tribal Ct. App. 1996), when the appellee failed to appear for oral argument, this Court heard oral argument from the appellant and issued a decision based on the record and the appellate pleadings. In a case more like the one before us in that the appellant failed to appear for oral argument and the rules provided that the parties “may” present oral argument, the Chehalis Tribal Court of Appeals[3] determined that the proper *202 procedure is to hear oral argument from the appellee and issue a ruling on the merits based on the totality of the record and the appellate pleadings. Revay v. Chehalis Tribe, 4 NICS App. 133, 133-134 (Chehalis tribal Ct. App. 1996). The Hoo-pa Valley Tribal Rules for Appeal provide that “[i]f either party fails to appear [at oral argument], the court shall allow the present party to make its arguments and shall base the decision on the argument and the briefs.” HVTC 2.6.20(f). The Federal Rules of Appellate Procedure provide that “[i]f the appellee fails to appear for argument, the court must hear appellant’s argument. If the appellant fails to appear for argument, the court may hear the appellee’s argument. If neither party appears, the case will be decided on the briefs, unless the court orders otherwise.” Fed. R.App. P. 34(e). There is no provision in the federal rules for an appeal to be dismissed because a party did not appear for oral argument. Dismissal for failure to appear at oral argument would be akin to a default judgment, and it is well established that the law disfavors default judgments. See, e.g., Griggs v. Averbeck Realty, Inc., 92 Wash.2d 576, 581, 599 P.2d 1289 (1979).
Here we have an appeal where a pro se appellant complied with the court rules and orders and filed a notice of appeal and a brief that both included substantial argument. The only transgression here is counsel’s failure to appear for oral argument. Penalizing the appellant, rather than the attorney, with the ultimate sanction of dismissal in these circumstances would not promote the purposes and goals of TTC 2.05.030(1), which include protecting the rights of individuals; securing “the just, speedy, and inexpensive determination of every civil action;” and securing “simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay.”
Based on the foregoing, we rescind our pronouncement to dismiss for failure to appear, and instead will proceed to examine the merits of this appeal based on the notice of appeal and written briefs that were filed. Because Appellee was able to file a written response to Appellant’s only brief, and parties “may not present arguments orally that have not been properly raised in a written brief or motion,” TTC 2.20.080, Appellee is in no way prejudiced by our decision to forgo oral argument in this case.
Discussion
Mr. Luongo, a non-Indian and the registered owner of the vehicle that the trial court ordered forfeited in this case, advertised the sale of medical marijuana in the Tulalip area in an on-line ad on Craig-slist.com.[4] An undercover Tulalip police officer noticed the ad and arranged to meet with Mr. Luongo on the reservation to make a purchase. Mr. Luongo met with the officer in a WalMart parking lot on the reservation and showed the officer a bag containing less than one ounce of marijuana, but refused to sell the marijuana to the officer at the time, and instead made arrangements to meet the officer later to complete the transaction. Upon leaving the WalMart, Mr. Luongo was ar *203 rested and his vehicle seized by a second Tulalip police officer. In his answer, testimony, notice of appeal, and a letter filed supplementing his notice of appeal, Mr. Luongo, age 68, claims this was his first experience in selling marijuana and that he was misled into believing his selling of medical marijuana was legal. He argues that he was entrapped by the Tulalip Police, that the forfeiture constitutes an excessive penalty, and he pleads for mercy. However, aside from certain details concerning the nature of the sting and arrest, Mr. Luongo does not contest the fundamental factual allegation that he used his vehicle to transport and facilitate the sale of a controlled substance on the Tulalip reservation.
As the Tribes state on page 3 of its brief, Mr. Luongo’s arguments on appeal can be fairly boiled down to (1) he was drawn onto the reservation by Tribal Police and therefore entrapped; and (2) the forfeiture of his van constitutes excessive punishment. The Tribe concedes Mr. Luongo raised both of these claims before the trial court, and they are both clearly articulated in his Notice of Appeal and his brief (though he provides no legal citations to support his rhetoric on either issue). We address each argument in turn below.
I. Standard of Review
The standard of review to be applied by this Court is set forth at TTC 2.20.090. The specific standards applicable to this case are as follows:
(1) A finding of fact by a Judge shall be sustained unless clearly erroneous;
[[Image here]]
(3) Any finding by the Judge, whether explicit or implicit, of witness credibility shall be reviewed as a finding of fact;
(4) A conclusion of law shall be reviewed de novo, or without deference to the Tribal Court’s determination;
[[Image here]]
(7) A sentence and the imposition of fine, forfeiture, or other penalty, excluding the assessment of damages, shall be reviewed as a discretionary determination of the Tribal Court;
(8) A matter which is within the discretion of the Tribal Court shall be sustained if it is reflected in the record that the Tribal Court exercised its discretionary authority, applied the appropriate legal standard to the facts, and did not abuse its discretion. A matter committed to the discretion of the Tribal Court shall not be subject to the substituted judgment of the Court of Appeals.
II. Entrapment
As the Tribes note, federal courts have “consistently adhered to the view ... that a valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in criminal conduct.” Mathews v. United States, 485 U.S. 58, 62-63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988) (citations omitted). The Tribes further argue that the defense of entrapment “has been recognized as unique to criminal law” and is therefore not available to Mr. Luongo in this is, a civil in rem proceeding against property. We do not share the Tribes’ certainty that the defense of entrapment is “unique” to criminal law and therefore inapplicable to a civil proceeding.
The United States Supreme Court has acknowledged that it is a “fiction” that “the thing” in an in rem proceeding “is primarily considered the offender,” Austin v. United States, 509 U.S. 602, 615, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). Although not concerned with entrapment and so not dispositive on this issue, Austin warns that reliance on the “technical dis *204 tinction between in rem proceedings and proceedings in personam ” would be “misplaced” in analyzing the constitutionality of the application of a forfeiture statute. Id. n. 9.[5]
In a 1988 decision, the United States Court of Appeals for the Eleventh Circuit expressly held that “the defense of entrapment is available” in a civil tax refund proceeding. Zwak v. United States, 848 F.2d 1179 (11th Cir.1988). Noting that the “the courts who have to date addressed the entrapment defense have done so only in the criminal context,” the Court stated “[a]t issue is not whether any other court has addressed the entrapment defense in a civil context, but rather whether the principles supporting application of this defense in a criminal context are equally applicable in a civil context.” Id. at 1183. The Court held that the principle which forms the basis for the entrapment defense in the criminal context “is equally applicable to circumstances in which an act” subject to a civil penalty “is committed by an otherwise innocent person at the instigation of government officials.” Id. at 1184. “To allow government officials to instigate an illegal act and lure an otherwise innocent person to commit the illegal act in order to assess and collect ... thereupon would do violence to the spirit and purpose” of the statute. Id. But see, dissenting opinion of Judge Hatchett, 848 F.2d at 1185-86 (contesting application of majority opinion to civil forfeiture proceedings).
The United States Court of Appeals for the Fifth Circuit has recognized a “due process defense within the context of entrapment” may apply in civil forfeiture proceedings. United States v. One Boeing 707 Aircraft, 750 F.2d 1280, 1284 (5th Cir.1985). In such a case, the Court held that “to determine whether due process has been violated in this civil forfeiture case, we look to the totality of the circumstances and balance the government involvement against the extent of participation and predisposition” of the property owner to commit the underlying crime. Id. at 1284-85. Because the court found no government misconduct in that case, it decided to “expressly pretermit as an issue whether government misconduct, if present, would affect forfeiture.” Id. at 1286. In other words, the Fifth Circuit has left open the question of whether an entrapment-like due process defense can defeat a civil forfeiture claim.
The United States Court of Appeals for the Ninth Circuit has held that certain statutes may be construed as granting a court the discretion to deny civil forfeiture in cases where the court determines that the government engaged in misconduct during the investigation and prosecution of a case.[6] United States v. One Bell Jet Ranger II Helicopter, 943 F.2d 1121, 1126-27 (9th Cir.1991). In an unpublished *205 opinion in another case, the Ninth Circuit assumed, without deciding, that a defendant could assert an entrapment defense in a civil forfeiture proceeding if the defendant could make an adequate threshold showing that he was induced by the government to commit the underlying crime and that “he was not otherwise predisposed to do that.” United States v. Real Property Located at 41430 De Portola Road, no. 91-55099, 1992 WL 67828, 1992 U.S.App. LEXIS 6584 (1992) (internal citation omitted). See also, United States v. Fifty Thousand Dollars US. Currency, 757 F.2d 103, 106 (6th Cir.1985) (dissenting opinion of Judge Merritt arguing that entrapment defense is available in a civil forfeiture proceeding to an entrapped property owner who can show that there was no violation of the forfeiture statute).
With at least three of the federal circuits holding that entrapment or equitable entrapment-like defenses are available in civil proceedings against property, no express ruling to the contrary from the United States Supreme Court, and no Tulalip law directly on point, this Court is not prepared to rule, as a matter of law, that a party is prohibited from asserting entrapment or entrapment-like defenses against a civil forfeiture under Chapter 2.15 of the Tulalip Tribal Code.
Turning to the facts of this case, the entrapment defense is of no avail to Appellant. The trial court allowed both parties to present evidence in regards to Mr. Luongo’s claim that he was entrapped. A printout of an email introduced into evidence by the Tribes establishes that it was Mr. Luongo, not the police, who first suggested a meeting place on the reservation (the food court at the Tulalip Outlet Mall). Mr. Luongo claims he later tried to persuade the undercover officer to meet him at Lake Goodwin, a location which Mr. Luongo testified is about a mile north of the reservation boundary. Ultimately, however, Mr. Luongo agreed to meet the undercover officer at the WalMart on the reservation based on no more than his email and telephone discussions with the officer. The undercover officer testified that during the meeting in the WalMart parking lot, Mr. Luongo asked the officer if he was a police officer and if their conversation was being recorded. Moreover, Mr. Luongo’s written answer to the complaint and his testimony under oath establish that the marijuana he sought to sell was from a grow operation that had been left for him at his house as a means to settle a debt, and that his house is within the boundaries of the Tulalip reservation. Thus, regardless of the meeting place for the sale itself, Mr. Luongo himself confirmed that his intent was to transport a controlled substance within the boundaries of the Tulalip reservation.
After observing the witnesses and reviewing the evidence, the trial judge specifically found that the Tulalip Tribal Police did not go out into the state jurisdiction and bring Mr. Luongo onto the reservation for purposes of seizing his vehicle.[7] The judge further found that in asking the undercover officer if he was a cop, Mr. Luongo showed knowledge that his activities might be illegal and that the vehicle was being used for an illegal purpose. This Court defers to the trial court’s determination *206 of witness credibility, and the trial court’s findings of fact “shall be sustained unless clearly erroneous.” TTC 2.20.090. We find no error in the judge’s findings of fact. Based on this record, there can be no question that Mr. Luongo was predisposed to transport a controlled substance within the exterior boundaries of the Tulalip reservation in violation of TTC 2.15.010(l)(a)(iv). Therefore, regardless of any concerns this Court may have regarding the tactics employed by the police in this case, there is no basis for this Court to overrule the trial court’s finding that Mr. Luongo was not entrapped.
Because we affirm the trial court’s ruling that Mr. Luongo was not entrapped, we need not rule definitively on the question of whether entrapment or entrapment-like defenses are available in TTC 2.15.010 forfeiture proceedings.
III. Excessive Fines Doctrine
The Indian Civil Rights Act (ICRA) provides that no Indian tribe in exercising powers of self-government shall “require excessive bail, impose excessive fines, or inflict cruel and unusual punishments.”[8] 25 U.S.C. 1302(a)(7)(A). Although the Tu-lalip Tribes do not appear to have expressly adopted the provisions of ICRA in toto, as have some other tribes (at least in regards to tribal members),[9] various provisions of the Tulalip Code and Constitution do recognize the applicability of ICRA and other aspects of federal law in Tulalip Tribal Court proceedings. See, e.g., TTC 2.05.020(2) (long arm jurisdiction consistent with ICRA); TTC 2.40.010(3) (exclusion power consistent with ICRA); TTC 8.10.310 (hunting violation penalties limited by ICRA); TTC 8.05.380 (fishing violation penalties limited by ICRA); TTC 2.05.030(2) (federal law may be utilized as a guide where no Tulalip Tribal law, ordinance, or custom law can be found); Constitution and Bylaws for the Tulalip Tribes of Washington, Preamble (exercise of home rule to be not inconsistent with federal laws).
In his Notice of Appeal, Mr. Luon-go argues the forfeiture of his van constitutes “excessive punishment, a constitutional protection I am being denied." Similarly, his written brief argues that forfeiture constitutes “undue and excessive punishment.” Although we find no explicit reference to ICRA or the excessive fines clause by Mr. Luongo in the trial court proceedings, he did argue during the hearing on the merits that the forfeiture is an “unfair price to pay” for any transgression he might have committed. The “Verifiable [sic] Answer” Mr. Luongo filed with the trial court and his testimony at the hearing described in some detail his purchase of the van, the investments he had made in the van, and the importance of the van to his ability to earn income and as a potential shelter in light of his concerns that he might lose his home. Luongo’s Verifiable Answer asserted that “[t]aking my truck ... would be a crushing blow to my struggle for survival.” In light of the fact that Mr. Luongo appeared pro se and that *207 TTC 2.20.030(1) commands that the court rules be construed to protect the rights of individuals, secure simplicity in procedure, and secure the just and inexpensive determination of every civil matter; this Court concludes that Luongo’s testimony and evidence was sufficient to preserve for appeal the issue of whether the forfeiture constituted an excessive fine.
Although Appellant has not presented the Court with legal authority concerning the excessive fines doctrine, the Tribes have. The Tribes argue that the Tribes’ civil forfeiture procedure is a “purely remedial” civil statute, and “not a punitive statute” that would implicate the excessive fines clause of either the Eight Amendment or ICRA. However, the lead case cited by the Tribe, Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), directly contradicts the Tribes’ argument. As the Tribes acknowledge, the Austin Court held that where asset forfeiture is at least part punitive, it is subject to analysis under the excessive fines clause. However, the Austin decision goes much further than that. Austin holds that, with the exception of the forfeiture of contraband materials (as opposed to a vehicle used to transport the contraband), virtually all forfeiture statutes are at least partly punitive in nature. The Austin decision also states that this is particularly so for forfeiture statutes that (1) provide for an “innocent owner” defense, and (2) are tied directly to the commission of drug offenses. Austin, 509 U.S. at 615-620, 113 S.Ct. 2801. Here, the Tulalip forfeiture statute is, of course, directly tied to drug offenses, and includes an “innocent owner” defense. TTC 2.15.010(1 )(e)(2). Thus, under the Tribes’ own theory of the case, the excessive fines clause of ICRA is applicable to forfeiture proceedings under TTC 2.15.010.
This Court agrees with the Tribe that TTC 2.15.010 forfeiture proceedings serve “a myriad of public policy objectives that are remedial in nature,” including “incapacitating illegal drug sales through removing conveyances used to facilitate the possession or transport of non-prescribed controlled substances.” This Court further recognizes that in light of federal law restricting tribal criminal jurisdiction over non-Indians, civil forfeiture statutes are an especially important tool in tribal efforts to incapacitate illegal drug sales by non-Indians. Nonetheless, as the Austin Court stated, “[w]e need not exclude the possibility that a forfeiture serves remedial purposes to conclude that- it is subject to the limitations of the Excessive Fines Clause.” 509 U.S. at 610,113 S.Ct. 2801.
Based on the reasoning of Austin, supra, we now hold that the excessive fines clause of the Indian Civil Rights Act, 25 U.S.C. 1302(a)(7)(A) does apply to civil forfeiture proceedings under TTC 2.15.010.
The trial court did not address Mr. Luongo’s excessive fines argument in either in its written judgment or its ruling from the bench.[10] As noted above, TTC 2.20.090(7) states the imposition of a forfeiture “shall be reviewed as a discretionary determination of the Tribal Court,” while TTC 2.20090(8) provides that “[a] matter which is within the discretion of the Tribal Court shall be sustained if it is reflected in the record that the Tribal Court exercised its discretionary authority, applied the appropriate legal standard to the facts, and did not abuse its discretion.” Here, in *208 failing to rule on appellant’s excessive fines claim, the trial court did not fully exercise its discretionary authority or apply the appropriate legal standard to the facts in regards to the claim. We therefore remand this matter to the trial court for additional fact-finding as to the value of Mr. Luongo’s van and a ruling as to whether the forfeiture of the van was excessive in light of the facts of this case.
IT IS SO ORDERED.

.TTC 2.20.100(1) requires the Court of Appeals to render a decision within 90 days of oral argument, which in this case would have been May 9, 2013, unless the Presiding Justice (who in this case is the Chief Justice) "determines there is good cause for an extension with notice to all parties.” The Chief Justice has determined that the complexity of the issues presented by this appeal, combined with Court staffing and travel issues, constitute good cause for an extension of the time to render a decision in this case, and while advance notice of this extension would have been preferable, the notice provided herein is sufficient given the relatively short extension the Court has allowed itself.

. TTC 2.20.070(d) generally requires motions to be in writing and to be served on the opposing party, and the opposing party must be allowed five days to respond. However, this Court retains inherent authority to entertain and rule on oral motions that cannot be made within statutory time frames.

. "[W]here no applicable Tulalip Tribal law, ordinance, or custom law can be found, the Courts may utilize, in the following order, the *202 procedural laws of other Federally recognized Indian tribes, Federal statutes, Federal common law, State common law, and State statutes as guides to decisions of the Courts.” TTC 2.05.030(2).

. Luongo asserted that Craigslist, not he, added the word “Tulalip” to the heading of his ad. Luongo also asserted that his activities were limited to the distribution of “medical" marijuana and were therefore legal under Washington State law outside of the jurisdiction of the Tribes. These assertions are immaterial to our decision.

. The Supreme Court also noted, in its seminal decision on criminal entrapment, that courts of equity can refuse equitable relief when "complainants come with unclean hands.’’ Sorrells v. United States, 287 U.S. 435, 450, 53 S.Ct. 210, 77 L.Ed. 413 (1932).

. The Tulalip Tribal Code contains conflicting provisions in regards to whether the trial court has discretion to deny forfeiture under TTC 2.15.010. The Tulalip Rules for Appeals state that the imposition of a forfeiture “shall be reviewed as a discretionary determination of the Tribal Court.” TTC 2.20.090(7) (emphasis added). However, the forfeiture ordinance states that, in regards to nonsummary forfeitures, ”[i]f the Court finds that the property was used for the purpose charged and that the property was used with the knowledge or consent of the owner, the property shall be forfeited to the Tribes." TTC 2.15.010(1 )(e)(ii) (emphasis added). Because we affirm the Trial Court’s finding that Appellant was not entrapped, we need not resolve this conflict here.

. The trial court findings discussed in this paragraph are those stated by the Judge as he announced his decision in open court at the conclusion of the July 6, 2012 hearing in this matter. These findings are not included in the written order presented by the Tribe and signed by the judge on that date. TTC 2.10.160 requires judgments in civil proceedings to be in writing, but leaves the inclusion of findings of fact and conclusions of law to the discretion of the judge.

. Similarly, the Eighth Amendment to the United States Constitution, though not directly applicable to tribes, Santa Clara Pueblo v. Martinez, 436 U.S. 49, 56, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), provides “Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.”

. See, e.g., Constitution and Bylaws of the Confederated Tribes of the Chehalis Reservation, Article VIII (Bill of Rights); Constitution and Bylaws of the Sauk-Suiattle Indian Tribe, Article VIII (Bill of Rights); Constitution and Bylaws of the Lummi Tribe of the Lummi Reservation, Article VIII (Bill of Rights).

. Given that Mr. Luongo did not explicitly invoke ICRA or the excessive fines clause, and given the parties' and the court’s focus on the entrapment issue at the hearing on the merits, the trial court's failure to rule on the claim is understandable.